99 F.3d 1138
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Bruce CLARKE & Good Earth Recycling, Inc., Plaintiffs-Appellants,
v.
MINDIS METALS, INC., Defendant-Appellee.
 No. 95-5517.
 United States Court of Appeals, Sixth Circuit.
 Oct. 24, 1996.
 
 Before: KENNEDY and BOGGS, Circuit Judges; and RUSSELL, District Judge.*
 BOGGS, Circuit Judge.
 
 
 1
 In this case of first impression raising questions about the 1993 amendments to Fed.R.Civ.P. 54(d), Bruce Clarke and Good Earth Recycling, Inc. ("Good Earth") appeal from the district court's order awarding fees and costs to Mindis Metals, Inc. under a contract. We affirm the district court's order in all respects.
 
 
 2
 * On December 15, 1989, Bruce Clarke, a citizen of Tennessee, leased real property with fixtures in Sullivan County, Tennessee to Mindis Metals, Inc. ("Mindis"), a citizen of Georgia. Mindis planned to operate a recycling center at the site.[1] The term of the lease was from January 1, 1990 to December 31, 1990. Rent was fixed in the amount of $4,000 per month. At the end of the term, the lease would be automatically extended, in the absence of written notice to the contrary, on a month-to-month basis at the rate of $5,000 per month. Both parties were empowered to terminate the hold-over term upon thirty days' written notice. Most significantly for purposes of this appeal, p 21 of the lease agreement provided:
 
 
 3
 21. Attorneys Fees: In case suit should be brought for recovery of the premises, or for any sum due hereunder, or because of any act which may arise out of the possession of the premises, by either party, the prevailing party shall be entitled to all costs incurred in connection with such action, including a reasonable attorney's fee.
 
 
 4
 Mindis took possession of the premises under the terms of the lease on January 1, 1990. Toward the end of the term of the lease, Mindis attempted to renegotiate the hold-over price term of the lease. Mindis wanted to reduce its monthly hold-over payments to $1,750. This attempt at renegotiation failed. Nevertheless, Mindis decided to continue in possession of the premises after the expiration of the lease. On January 4, 1991, Clarke notified Mindis that Mindis would be responsible for January rent and for damage allegedly done by Mindis to the building. On January 21, 1991, Mindis vacated the building, but did not remove all of its materials, having been locked out by Clarke, who posted a "no trespassing sign" on the premises.
 
 
 5
 On August 1, 1991, Clarke filed a complaint in the Circuit Court for Sullivan County, Tennessee, seeking rent from Mindis for the hold-over period in January 1991 and recompense for alleged damages done to its building, totaling $68,740. Mindis removed the case to federal court on August 26, 1991. Mindis filed an amended complaint for additional damages on September 27, 1991, which also demanded a jury trial and prayed for an award of attorney's fees. On February 24, 1992, Mindis amended its answer to counterclaim for damages pertaining to certain recycling materials left at the site and not returned to it by Clarke. Mindis requested $25,200 in compensatory damages and $50,000 in punitive damages on its counterclaim.
 
 
 6
 The district court held a pretrial conference on May 28, 1992 before a magistrate judge. The resulting order issued by the magistrate judge on June 1, 1992, determined that "the issue of attorney's fees, if any[,] to be awarded to the prevailing party, [will] be determined by the trial judge at some point subsequent to the entry of the verdict of the jury in this case." The parties to the dispute had requested that the matter of attorney's fees be dealt with in this fashion. On August 26, 1992, Mindis made a $16,000 settlement offer to Clarke that was rejected.[2] Clarke argues that Mindis agreed to clean up the site during the course of the litigation, but Clarke provides no citation to the record to support this claim and we have been able to locate no supporting evidence for this proposition in the record. On October 5, 1992, a pretrial order was issued amending Mindis's counterclaim for damages to include the return of its $4,000 security deposit.
 
 
 7
 Mindis filed a motion for partial summary judgment on September 8, 1992, alleging that Clarke had improperly terminated the lease agreement as of December 31, 1990, and that Mindis was unlawfully ejected, so that its obligation for rent terminated on January 21, 1991. Mindis also requested that it only pay a pro rata share of rent up to January 21, 1991, based on a monthly rental rate of $4,000. On January 19, 1993, the district court granted Mindis's motion in part and denied it in part, finding that the applicable monthly rental rate under the lease was clearly $5,000. The district court ordered Mindis to pay a pro rata share of this amount for January 1-21, 1991. [Hereinafter "First Order."] The court also held that Clarke had breached the lease by locking out Mindis and for this reason chose not to order Mindis to pay Clarke a full month's hold-over rental fee of $5,000 for the month of January 1991.
 
 
 8
 Mindis then filed a motion for summary judgment on all remaining issues. The district court denied Mindis's motion for summary judgment on September 29, 1993, but held, in apparent contradiction of its First Order, that "there is a material dispute of fact in regard to which party breached the lease" and so "[t]his case will precede to trial on the issue of liability." [Hereinafter "Second Order."] Recall that in the First Order the district court held that both parties had breached the lease. What the district court likely meant, however, is that a material issue remained only as to whether Mindis further breached the lease by committing waste during the time it was in possession of the premises. In the Second Order, the district court went on to hold that there was a material factual dispute about what damages were incurred as a result of the alleged breach. In its Second Order, the district court also limited the kind of damages Clarke would be permitted to try to prove at trial. Finally, in the Second Order, the district court granted a motion unopposed by Mindis to add Good Earth as a plaintiff.[3] [Hereinafter Clarke and Good Earth are collectively referred to as "Clarke."]
 
 
 9
 A jury trial was held on these remaining issues from March 30, 1994 to April 4, 1994. At the trial, Clarke stipulated that Mindis's $4,000 security deposit would be returned to Mindis after being offset by any damages awarded to Clarke by the jury. The jury rendered its verdict on April 4, 1994. It found that Mindis had not breached the lease by causing damage in excess of normal "wear and tear" to Clarke's building or equipment. The jury rejected Mindis's counterclaims against Clarke in their entirety, however. The district court formally entered final judgment in the case on April 5, 1994. The same day, it ordered Clarke to return Mindis's $4,000 security deposit pursuant to the stipulation made at trial.
 
 
 10
 On May 4, 1994, 29 days after final judgment was entered, Mindis filed a motion for assessment of costs and attorneys' fees against Clarke in the amount of $110,080.38 for the entire period of the case from the time Clarke filed his complaint until the time the district court's April 5, 1995 order was entered, or $70,583.61 for the time period from Mindis's settlement offer until the district court's April 5 orders. Clarke responded to this motion arguing it was 15 days late, when judged against the 14-day time-limit set for certain attorney's fees motions in Fed.R.Civ.P. 54. By supplemental response, Clarke argued that Mindis was also not the prevailing party in the litigation. In both of these filings, Clarke asked for the opportunity to address the reasonableness of the fees requested should the district court decide to entertain Mindis's motion. The district court never held a hearing on the issue and granted Mindis's motion for fees and costs on March 29, 1995. It awarded Mindis $9,628.21 in costs and $60,955.60 in fees for a total award of $70,583.61. [Hereinafter "Third Order."] The amount the district court awarded Mindis equaled the total costs and fees Mindis had claimed for the time period from the offer of settlement until the district court formally entered final judgment. Clarke filed a timely notice of appeal from the district court's award of costs and fees. In its brief, Mindis claims that it called the district court's clerk and was told that it had 30 days to file its motion for fees and costs.
 
 
 11
 Clarke's appeal presents four issues for resolution: (1) whether the district court had jurisdiction to entertain Mindis's motion for attorney's fees after having already formally entered final judgment; (2) whether the 14-day time limit in Fed.R.App. 54(d)(2)(B) applies to cases where attorney's fees are not provided for by rule or statute, and if so, whether Mindis's motion for attorney's fees was untimely; (3) whether Mindis was a "prevailing party" within the meaning of Fed.R.Civ.P. 54(d)(1) and/or Mindis's lease with Clarke; and (4) whether Mindis is entitled to the approximately $9,000 in costs awarded to it by the district court. Neither party has raised the jurisdictional issue this case presents, but it is axiomatic that we must raise issues of subject matter jurisdiction sua sponte. Community First Bank v. Nat'l Credit Union Admin., 41 F.3d 1050, 1053 (6th Cir.1994).
 
 II
 
 12
 With the exception of Clarke's final assignment of error, relating to costs, the standard of review to be applied in this case is de novo. Clarke's arguments are largely about how the Federal Rules of Civil Procedure should be construed. Clarke is not arguing that the district court improperly exercised its discretion in deciding to award fees; rather, he is arguing that the district court was legally unable to award fees. " 'We give the Federal Rules of Civil Procedure their plain meaning.' As with a statute, our inquiry is complete if we find the text of the Rule to be clear and unambiguous." Business Guides, Inc. v. Chromatic Communications Enters., Inc., 498 U.S. 533, 540-41 (1991) (quoting Pavelic & LeFlore v. Marvel Entertainment Group, 493 U.S. 120, 123 (1989)). And, of course, the issue of whether the district court had jurisdiction to enter its Third Order awarding attorney's fees must be reviewed de novo because, not having been raised by the parties or by the district court sua sponte, it was not passed on below.
 
 A. Jurisdiction
 
 13
 The district court formally entered final judgment in this case on April 5, 1994. It did not award attorney's fees until March 29, 1995, however. Because we determine later in this opinion that the issue of attorney's fees was an integral part of the various claims and counterclaims in this case stemming from the lease and not collateral to the merits, an obvious problem with the district court's fee award comes into focus. The district court obviously should not have entered final judgment until after it had resolved the question of attorney's fees. In this case, attorney's fees are analogous to damages for breach of the lease and it was error for the district court to have entered final judgment before this issue was resolved, just as it would be error in any breach of contract case to enter final judgment after liability had been determined, but before damages had been calculated.
 
 
 14
 The district court's manner of disposing of this case is, however, understandable. Typically, attorney's fees are collateral to the merits and are awarded only after the entry of judgment. See Fed.R.Civ.P. 54(d)(2)(B) (providing that collateral claims for attorney's fees are recoverable by motion after the entry of judgment). Deciding most civil cases in the shadow of the American rule, which does not allow prevailing parties to recover attorney's fees, it is entirely predictable that most trial judges would think about attorney's fees exclusively as matters collateral to the merits. Attorney's fees are not always collateral to the merits, however, because the American rule can be overcome by contract in the absence of a statute to the contrary. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 256 (1975) ("enforceable" contracts supersede the common law rule that each side in litigation pays its own attorney's fees). It might be thought that once a district court issues an order entitled "final judgment," or in some other way titles one of its orders so as to indicate that it intended to close out a case, that the district court's jurisdiction over the case ceases at that moment. This cannot be the law for the reasons we explain below.
 
 
 15
 The notion that a district court's jurisdiction ceases at the time it enters an order denominated "final judgment" or some equivalent must be rooted in one of two potential sources of law. The first candidate is 28 U.S.C. § 1291, which provides that "[t]he courts of appeals ... shall have jurisdiction of all appeals from final decisions of the district courts of the United States...." (Emphasis supplied). But this rule is designed to prevent the courts of appeals from reviewing a district court decision prematurely. " 'The general principle of federal appellate jurisdiction, derived from the common law and enacted by the First Congress, requires that review of nisi prius proceedings await their termination by final judgment.' " McNutt v. Cardox Corp., 329 F.2d 107, 109 (6th Cir.1964) (per curiam) (quoting Di Bella v. United States, 369 U.S. 121, 124 (1962)). The collateral order doctrine provides an exception, allowing review of an interlocutory appeal under certain narrowly defined circumstances. See, e.g., Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949). But § 1291 is inapplicable to this case because it circumscribes the jurisdiction of the courts of appeals, not the jurisdiction of the district courts. Section 1291 does not purport to restrict the jurisdiction of the district courts or define any procedural limitations on how the district courts should go about entering final judgment.
 
 
 16
 Fed.R.Civ. 58 is the second, more likely, candidate. Rule 58 provides:
 
 Subject to the provisions of Rule 54(b):
 
 17
 (1) upon a general verdict of a jury, or upon a decision by the court that a party shall recover only a sum certain or costs or that all relief shall be denied, the clerk, unless the court otherwise orders, shall forthwith prepare, sign, and enter the judgment without awaiting any direction by the court;
 
 
 18
 (2) upon a decision by the court granting other relief, or upon a special verdict or a general verdict accompanied by answers to interrogatories, the court shall promptly approve the form of the judgment, and the clerk shall thereupon enter it.
 
 
 19
 Every judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a). Entry of the judgment shall not be delayed, nor the time for appeal extended, in order to tax costs or award fees, except that, when a timely motion for attorneys' fees is made under Rule 54(d)(2), the court, before a notice of appeal has been filed and has become effective, may order that the motion have the same effect under Rule 4(a)(4) of the Federal Rules of Appellate Procedure as a timely motion under Rule 59. Attorneys shall not submit forms of judgment except upon direction of the court, and these directions shall not be given as a matter of course.
 
 
 20
 There are a number of problems with the potential argument that Rule 58 limits the jurisdiction of the district courts once it enters an order denominated "final judgment" or some equivalent. First, and most significantly, Rule 58's operation is "subject to the provisions of Rule 54(b)." Fed.R.Civ.P. 54(b) provides:
 
 
 21
 Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon a direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights or liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.
 
 
 22
 (Emphasis supplied.) Rule 54(b) makes it clear that unless a district court specifically: (1) enters judgment and (2) finds there is no just reason for delay, then, regardless of how it designates any order disposing only of some of the claims in an action, that order is not a final judgment. The court made no specific finding that there was no just cause for delay in its April 5, 1995 entry of judgment. Therefore, by operation of Rules 58 and 54(b), the district court's apparent entry of final judgment on April 5, 1994 was exactly that--only apparent. The label the district court applies to its orders is irrelevant for purposes of these two rules. Cf. Sullivan v. Finkelstein, 496 U.S. 617, 628 n. 7 (1990) ("It is true ... that the District Court did not caption its order as a 'judgment,' much less a 'final judgment.' The label used by a District Court of course cannot control the order's appealability...."). In this case, final judgment was not actually entered in accord with these two rules until March 29, 1995, when the district court disposed of the remaining issue in the case, that of attorney's fees.
 
 
 23
 Second, while Rule 58 does provide that the entry of judgment should not be delayed in order to file a motion for attorney's fees, this stricture only applies to motions for attorney's fees under Rule 54(d)(2). As we explain in greater length in Subsection B, infra, because the attorney's fees in this case are not collateral to the merits, they are not governed by Rule 54(d)(2). Under the plain text of Rule 58, there is no reason that a claim for attorney's fees that is not collateral to the merits does not have the same effect as any other unresolved claim--it delays the entry of final judgment under Rule 54(b).
 
 
 24
 Third, just as with § 1291, Rule 58 does not limit the jurisdiction of the district courts in any way. It is designed to establish certain procedural requirements for the issuance of final judgment (separate document), to prescribe how final judgment is to be issued (sometimes by the court itself and sometimes by its clerk), and to establish how filing certain motions for costs and attorney's fees interact with the time limit for taking an appeal. The Supreme Court has held that: "The filing of a notice of appeal is an event of jurisdictional significance--it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982) (per curiam). It cannot be seriously maintained, however, that a district court perpetually retains complete jurisdiction over a case it has decided unless and until an appeal is taken, however. Filing a notice of appeal can terminate the district court's jurisdiction sooner, but in the absence of an intervening appeal, once a district court has disposed of all claims against all parties pursuant to Rule 54(b), a district court retains jurisdiction over a case until the time for filing motions for a new trial or motions for relief from the judgment or order under Fed.R.Civ.P. 59 & 60(b) has elapsed.
 
 
 25
 Thus, even if it were the case that the district court had disposed of all claims by all parties pursuant to Rule 54(b) with its April 5, 1994 entry of judgment, it would still be true that the district court could, upon a party's motion, provide relief from that entry of final judgment so long as no appeal had been taken in the interim. In this case, the district court probably erroneously assumed, as we have pointed out above, that the issue of attorney's fees was collateral to the merits, not essential to resolving the merits under Rule 54(b). Despite this initial error, however, we are still forced to conclude that the district court had jurisdiction to enter its March 29, 1995 attorney's fee award upon Mindis's motion by construing that motion as one for relief from the judgment on account of mistake under Rule 60(b)(1)--the mistake in this case being the district court's. Cf. Camp v. Gregory, 67 F.3d 1286, 1289-90 (7th Cir.1995) (district courts have the discretion to construe a Fed.R.Civ.P. 15(a) motion to amend a complaint as a Rule 60(b) motion after the entry of final judgment). Mislabeling should not be fatal. See Schlesinger v. Councilman, 420 U.S. 738, 742 n. 5 (1975) (noting that even though a complaint was not filed in a case in accordance with Fed.R.Civ.P. 3, "any defect in the manner in which the action was instituted and processed is not itself jurisdictional and does not prevent entry of a valid judgment"). Even if we were to assume that the April 5, 1994 order was an entry of final judgment, the one-year limitation on filing a Rule 60(b)(1) motion had not yet elapsed at the time Mindis filed its motion for attorney's fees. And Clarke did not file a notice of appeal in this case until after Mindis's motion was granted, so the district court's jurisdiction was not cut short at any point by the operation of § 1291 and Griggs.
 
 
 26
 Fourth, Rule 58 is not interpreted in a hypertechnical fashion, especially when the functions it is designed to serve are met. See Bankers Trust Co. v. Mallis, 435 U.S. 381, 384 (1978) ("sole purpose of the separate-document requirement ... was to clarify when the time for an appeal ... begins to run"); Scarfo v. Cabletron Sys., Inc., 54 F.3d 931, 936 (1st Cir.1995) (finding the "functional equivalent" of final judgment in a series of orders, even though Rule 58's requirement that a final judgment be set out in a separate document was not met and the parties to the case "will have great difficulty finding out exactly what were the terms of the 'final judgment' " because the district court's ultimate holding is spread across many documents). "[W]hether a decision is final depends on whether the district court is through with the case, rather than on the formality of a Rule 58 judgment." Richmond v. Chater, 94 F.3d 263, 269 (7th Cir.1996). We must construe and administer the Federal Rules of Civil Procedure in a manner so as "to secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1. The parties clearly anticipated, pursuant to the district court's pretrial order on June 1, 1992, that the issue of attorney's fees would be decided by the court after the jury returned its verdict. Therefore, it serves the ends of justice to reach the merits of this issue.
 
 
 27
 Thus, to summarize: we hold that the district court had jurisdiction to entertain an award of attorney's fees to Mindis in this case for four reasons. First, its entry of final judgment did not comport with Rules 58 and 54(b) because it did not dispose of the issue of attorney's fees that was a part of the claims and counterclaims advanced in the case. Second, as we explain in more detail in Subsection B. infra, Rule 58's provision that a motion for attorney's fees cannot delay the entry of final judgment is inapplicable to this case. Third, even if the district court's entry of judgment on April 5, 1994 had been final, we would construe Mindis's motion for attorney's fees as a Rule 60(b)(1) motion for relief from the judgment on account of mistake. Finally, we note that it would be hypertechnical and not in accord with the spirit of the Federal Rules to interpret them in a fashion that would lead to the conclusion that the district court lacked jurisdiction to entertain the motion for fees. We would be remiss in not emphasizing, however, that the district court erred by entering "final judgment" before deciding the issue of attorney's fees. To avoid confusion, final judgment orders should not be entered until non-collateral attorney's fees issues (and all other claims in the case against all parties) are fully resolved.
 
 
 28
 B. Attorney's Fees--A Collateral Issue or a Merits Issue?
 
 
 29
 The rule at the heart of this case is Fed.R.Civ.P. 54(d), which provides, in relevant part:
 
 
 30
 (1) Costs Other than Attorneys' Fees. Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs....
 
 
 31
 (2) Attorneys' Fees.
 
 
 32
 (A) Claims for attorneys' fees and related nontaxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial.
 
 
 33
 (B) Unless otherwise provided by statute or order of the court, the motion must be filed and served no later than 14 days after entry of judgment; must specify the judgment and the statute, rule, or other grounds entitling the moving party to the award; and must state the amount or provide a fair estimate of the amount sought. If directed by the court, the motion shall also disclose the terms of any agreement with respect to fees to be paid for the services for which claim is made.
 
 
 34
 The general rule in American litigation apparent from Rule 54(d)(1)-(2), of course, is that each side pays its own attorney's fees. Key Tronic Corp. v. United States, 114 S.Ct. 1960, 1965 (1993). This rule can be varied by the "substantive law governing the action." Rule 54(d)(2)(A). Mindis argues that the "substantive law" referred to in the rule includes provisions in contracts relating to attorney's fees. The Advisory Committee's notes to the 1993 amendments to the Federal Rules of Civil Procedure clinch Mindis's claim in this regard. Once this is realized, however, it follows immediately that the plain text of Rule 54(d)(2)(A) mandates that the procedures relating to attorney's fees in the remainder of Rule 54(d)(2) do not apply when attorney's fees are recoverable under the substantive law governing the action. "Claims for attorneys' fees and related nontaxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial." Fed.R.Civ.P. 54(d)(2)(A). In cases where the substantive law provides for the recovery of fees as an element of damages, for instance whenever an attorney's fee provision is contained in a contract and not a statute, no motion need be made under Rule 54(d)(2)(A).
 
 
 35
 The Advisory Committee's notes solidify this conclusion:
 
 
 36
 Paragraph (2). This new paragraph establishes a procedure for presenting claims for attorneys' fees.... As noted in subparagraph (A), it does not, however, apply to fees recoverable as an element of damages, as when sought under the terms of a contract; such damages typically are to be claimed in a pleading and may involve issues to be resolved by a jury.
 
 
 37
 Fed.R.Civ.P. 54(d)(2) advisory committee's note (1993).
 
 
 38
 There are few cases recognizing the distinction between attorney's fees as a collateral matter and attorney's fees as an issue that is part of the merits of a case. In Caremark, Inc. v. Coram Healthcare Corp., 924 F.Supp. 891, 892 (N.D.Ill.1996), the district court held that after it had dismissed a complaint for securities fraud relating to a sales contract it had no jurisdiction to award attorney's fees under that contract, given the clear text of Rule 54(d)(2)(A) and the Advisory Committee's notes on that provision in the Federal Rules. Caremark relied upon another Northern District of Illinois case. Cohn v. Taco Bell Corp., No. 92 C 5852, 1995 WL 493453 (N.D.Ill. Aug. 16, 1995) (holding that claims for attorney's fees based on a contract must be made in the pleadings and not by motion under Rule 54(d)(2)).
 
 
 39
 This case differs from Caremark in that the parties stipulated, and the court ordered, that the issue of attorney's fees would be resolved after trial. There is a split of authority over whether attorney's fees mandated by contract should be decided by the judge or a jury. See Cohn, 1995 WL 493453, at * 6 (explaining that the Second Circuit holds this matter to be a jury question and the Northern District of Illinois holds it to be a question for the judge). We need not decide this issue for the circuit here, however, given the parties' stipulation in this case to let the judge resolve the question. Once it is understood that the parties made this stipulation and that the recovery of attorney's fees provided for by contract is not a matter collateral to the merits, then the proper resolution of this case becomes obvious. What occurred here is no different than if the parties had agreed to allow the district court in this dispute to decide the issue of liability under the contract and then put the question of damages to the jury, or vice versa. Therefore, as we have also concluded above, there was really no final judgment in this case until the order awarding fees to Mindis was entered by the district court. This attorney's fees order disposed of all of the issues raised by all of the parties to the case in accordance with Rule 54(b). As a result, it is unnecessary to consider whether Mindis filed a motion for fees in a timely fashion.
 
 
 40
 There is no significance to the fact that Mindis filed a motion claiming attorney's fees. Motions are the way that parties bring matters to the attention of the court. Fed.R.Civ.P. 7(b)(1). In this case, a Rule 54(d)(2)(B) motion for attorney's fees was unnecessary and, as the Caremark court has held, the district court in this case would have had no jurisdiction to hear such a motion. Not all motions for attorney's fees are Rule 54(d)(2)(B) motions for attorney's fees.
 
 
 41
 Clarke seems to anticipate this simple resolution of the case and so devotes an entire section of his brief to refuting it, entitled "Mindis Was Required to File a Motion for Attorneys' Fees Pursuant to Fed.R.Civ.P. 54(d)(2)(B)." He argues that when the parties stipulated to have the issue resolved after trial, they were stipulating that it would be resolved pursuant to Fed.R.Civ.P. 54(d)(2)(B). The parties cannot make such a stipulation involving the Federal Rules, however, if the terms of the rule involved clearly do not permit (as they do not in this case) what the stipulation attempts to accomplish. Only attorney's fees provided for by statute or rule are governed by Rule 54(d)(2)(B).
 
 
 42
 Clarke also argues that, under the text of Rule 54(d)(2)(A), a motion would have to be filed because the pre-trial stipulation resulted in the issue of attorney's fees not being resolved until after trial. Clarke misunderstands the meaning of this rule, which states: "Claims for attorneys' fees and related nontaxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial." Fed.R.Civ.P. 54(d)(2)(B) (emphasis supplied). The claim for attorney's fees in this case is clearly the sort of claim that was an element of damages to be proved at trial. That the parties agreed to waive a possible jury trial right on the issue of attorney's fees and have the issue resolved by the district judge after the end of a jury trial addressed to the remaining issues does not change this fact. The "substantive law," i.e., the contract, placed the attorney's fees claim at the heart of the case; they were not a collateral matter. The parties' stipulation could not change this; it could only change the timing of the decision and the decisionmaker. The parties could not stipulate that attorney's fees provided for in a contract were a collateral matter divorced from the merits of the case to be governed by Rule 54(d)(2)(B). They could, of course, have stipulated that the issue of attorney's fees would need to be raised by motion after the resolution of all the other issues within some time frame, perhaps the same 14-day time frame in Rule 54(d)(2)(B), but there was no such explicit stipulation in this case.
 
 
 43
 In his reply brief, Clarke argues that Mindis should be barred from raising the argument that the issue of attorney's fees in this case was not a collateral matter because the company did not raise this argument below. This argument confuses appellees with appellants, however. Appellants must raise arguments below or be prevented from raising them on appeal. Appellees can defend a ruling of a lower court or the verdict of a jury on any ground, even one they never employed below, should the other party appeal. Washington v. Confederated Bands and Tribes of Yakima Indian Nation, 439 U.S. 463, 476 n. 20 (1979).
 
 
 44
 While we hold that the time limit of Rule 54(d)(2)(B) does not apply to this case, obviating the need for us to inquire into whether Mindis's motion met that deadline, we still need to decide whether Mindis was a "prevailing party" within the meaning of the lease before upholding the district court's award of fees to Mindis.
 
 C. Prevailing Party
 
 45
 Both appellants and appellee rely on Rule 54(d)(1) cases about "prevailing parties" rather casually. There could be a significant problem with doing so. The need to determine the identity of the prevailing party or parties in this case flows from a contract, not from a federal statute or rule. It is entirely possible for the parties to a contract to devise their own definition of a "prevailing party." However, where, as here, the contractual provision awarding fees is identical to the frequently-used statutory term "prevailing party," and there is no effort to define that term differently in the lease providing for the recovery of fees, we hold that the parties intend the term "prevailing party" to have the meaning given it by the case law under Rule 54(d)(1).
 
 
 46
 " 'The general principle under Rule 54(d) is that costs go as of course to the prevailing party, subject to the district court's discretion to direct otherwise.' 6 J. Moore, W. Taggart, & J. Wicker, Moore's Federal Practice p 54.7 (2d ed. 1988). This general principle under Rule 54(d) applies even when the successful party is not awarded his entire claim." Zackaroff v. Koch Transfer Co., 862 F.2d 1263, 1265-66 (6th Cir.1988). In other words a party need not prevail on all issues to be deemed a "prevailing party." United States v. Mitchell, 580 F.2d 789, 793-94 (5th Cir.1978). Clarke's argument that Mindis must prevail on "most" of the claims in the case is not the law. Moreover, there is a strong argument that Mindis actually did prevail to a greater extent on the issues involved in this case than Clarke.
 
 
 47
 In this case, obviously Mindis did not entirely prevail on its counterclaim. However, it was the predominantly prevailing party judged from the baseline of the August 1992 settlement offer it made. Moreover, it did prevail on a number of issues. See the summary table below:
 
 
 48
 SUMMARY OF ISSUES PREVAILED ON BY THE PARTIES TO THIS APPEAL
 
 
 49
 Issues on which Clarke Prevailed Issues on which Mindis Prevailed
 
 
 50
 1. perhaps Mindis agreed to perform 1. ruling by district court on
 
 
 51
 clean-up of the premises; partial summary judgment that Clarke
 
 
 52
 improperly terminated lease;
 
 
 53
 2. ruling by district court on 2. ruling by district court on
 
 
 54
 partial summary judgment that partial summary judgment that Clarke
 
 
 55
 hold-over rental rate was $5,000 per had breached lease by locking Mindis
 
 
 56
 month, judged against the baseline of out;
 
 Mindis's position that the hold-over
 
 57
 rental rate was $4,000; and
 
 
 58
 3. jury verdict rejecting all of 3. ruling by district court limiting
 
 
 59
 Mindis's counterclaims. the kind of damages Clarke would be
 
 
 60
 permitted to try to prove at trial;
 
 4. jury verdict rejecting Clarke's
 
 61
 claim that Mindis had committed
 
 
 62
 waste; and
 
 5. security deposit returned by court
 
 63
 order (assuming this issue is
 
 
 64
 separate from the issue of whether
 
 
 65
 Mindis committed waste).
 
 
 66
 From this summary it is obvious that Mindis was at least partially a prevailing party, and on balance probably prevailed on more issues, especially issues of greater financial consequence, than Clarke. See Monroe Auto Equip. Co. v. Int'l Union, UAW, 981 F.2d 261, 269-70 (6th Cir.1992) (holding that the prevailing party in a lawsuit may recover fees under an enforceable contract providing for the recovery of such fees); Lewis v. Pennington, 400 F.2d 806, 820 (6th Cir.1968) (prevailing party need not sustain all of its claims), cert. denied sub nom. Pennington v. UMW of Amer. 393 U.S. 983 (1969). Thus, there was no bar under the terms of the contract for the district court to award fees to Mindis.
 
 
 67
 Because there was no need under Rule 54(d)(2)(A) for either party to comply with the requirements of Rule 54(d)(2)(B), and because Mindis was a prevailing party within the meaning of the lease in this case, we reject Clarke's argument that the district court's award of attorney's fees to Mindis was legally improper. We go on to consider Clarke's quarrel with the district court's award of costs to Mindis.
 
 D. Costs
 
 68
 Clarke's argument that this court should order a split of costs is wholly lacking in merit. Clarke remains free to move the district court for costs. Fed.R.Civ.P. 54(d)(1) provides no time limit regarding motions for costs. We cannot presume to know how the district court would use its discretion to award costs to Clarke. All of the cases that Clarke cites to support his argument to the contrary are completely inapposite, with two exceptions. But even these two cases do not support Clarke's argument. See White & White, Inc. v. American Hosp. Supply Corp., 786 F.2d 728, 733 (6th Cir.1986) (holding that district court properly exercised its discretion in denying costs); Srybnik v. Epstein, 230 F.2d 683, 686 (2d Cir.1956) (affirming district court that denied costs to both sides in a case involving counterclaims where neither side prevailed).
 
 
 69
 Clarke could be arguing that the district court abused its discretion in granting Mindis too large an award of costs. Clarke provides no basis for such a conclusion. He does not argue, for instance, that the photocopying expenses Mindis submitted are unreasonable. The district court has no obligation to "split" costs unless it is presented with evidence about the costs of all relevant parties to a controversy. Clarke has no claim against the costs Mindis received unless such a claim is in the form of an offset for Clarke's own costs. But again, Clarke did not move the district court for an award of costs. "Splitting" costs is perhaps a misnomer. All that is intended by the term is that after each side has moved for costs, the district court is free to award subsets of costs in relation to particular issues involved in the litigation and to offset the smaller total award against the larger total award, so that only one transfer of funds is required. "Netting" might be a better word for what is going on in such situations.
 
 III
 
 70
 We AFFIRM the district court's award of attorney's fees to Mindis and reject Clarke's invitation to reapportion costs.
 
 
 71
 KENNEDY, Circuit Judge, concurring.
 
 
 72
 Because I do not believe that the attorney's fees here are a separate claim, I cannot concur in that portion of the majority opinion which says that there was no final judgment because a claim remained unadjudicated.
 
 
 73
 The attorney's fees here were an item of damages on the breach of contract claim. Merrill Lynch, Pierce, Fenner & Smith v. Knudson, 749 F.2d 496, 498 (8th Cir.1984); Aetna Casualty & Surety Co. v. Giesow, 412 F.2d 468, 470 (2d Cir.1969); see also Acha v. Beame, 570 F.2d 57, 62 (2d Cir.1978) (defining "claim" in context of Rule 54(b)); Original Ballet Russe v. Ballet Theatre, 133 F.2d 187, 189 (2d Cir.1943) (defining "claim" in context of Rule 10(b)). What we have here is a failure of Mindis to prove a portion of his damages which the parties stipulated could be submitted to the judge. Mindis would not have been entitled to attorney's fees in the absence of the breach of contract, and thus only a single claim was involved.
 
 
 74
 Moreover, this Circuit has held that a judgment is final for purposes of appeal although the amount of attorney's fees has not been determined. Memphis Sheraton Corp. v. Kirkley, 614 F.2d 131, 133 (6th Cir.1980).[1] I think it is dangerous to adopt a rule which holds there is no final judgment where the District Court has overlooked some aspect of the case yet has entered a separate document entitled "final judgment." Why should there be any difference in our jurisdiction when the District Court refuses to consider an item of damages and enters a final judgment and those cases where the omission is inadvertent and the court enters a final judgment? I have reviewed too many cases where litigants have claimed, sometimes successfully, that the District Court overlooked or failed to recognize a part of some claim or an item of damages. Under the proposed analysis, the Court of Appeals would be without jurisdiction to review those cases and would have to dismiss the appeal where the omission was inadvertent.
 
 
 75
 I concur, however, in that portion of the opinion that finds that the District Court had jurisdiction to correct the error under Rule 60(b). While the proper procedure would have been a motion to amend or alter the judgment filed within ten days of its entry, Rule 60(b) permits the tardy correction of the inadvertent error.
 
 
 76
 In all other respects, I concur in the majority opinion.
 
 
 
 *
 The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation
 
 
 [1]
 The district court indicated that the lease was signed on December 11, 1989, but Mindis actually did not endorse the lease until December 15
 
 
 [2]
 In its brief, Mindis also claims that its offer of settlement would have allowed Clarke to keep the company's security deposit of $4,000 and to keep $2,441 received from the sale of Mindis-owned materials left at the site
 
 
 [3]
 Good Earth's substantive role in this litigation is unknown to us. Perhaps sensing this, Clarke filed a clarification of his brief indicating that all of the assignments of error he makes apply with equal force to Good Earth's interests in this appeal, whatever they may be
 
 
 [1]
 Although Memphis Sheraton involved a judgment that included an award of attorney's fees, but did not fix the amount, the panel did not suggest that a situation such as the one in this case should make any difference in the finality of the judgment. In fact, we expressly did not ally ourselves with the Second Circuit's approach in Aetna Casualty & Surety Company, 412 F.2d at 470, a case where the "final judgment" did not include an award of attorney's fees, and the court held that where reasonable attorney's fees incurred by surety were a contractually specified element of damages and the amount was not determined, judgment was not an appealable final judgment. See 614 F.2d at 132-33