### PRIDE HYUNDAI, INC., Blackstone Subaru, Inc., d/b/a Pride Hyundai of Seekonk, Pride Dodge, Inc., and Pride Chrysler–Plymouth, Inc., Plaintiffs,

### v.

### CHRYSLER FINANCIAL COMPANY, LLC, Defendant.

### No. C.A.01–412S.

United States District Court, D. Rhode Island.

Jan. 30, 2005.

---

Preston W. Halperin, Esq., Thomas E. Carlotto, Esq., Christine L. DeRosa, Esq., Shechtman Halperin Savage LLP, Providence, RI, for Plaintiffs.

Thomas W. Lyons, III, Esq., Strauss, Factor & Lopes, Providence, RI, Jonathan D. Deily, Esq., Deily, Dautel & Mooney, LLP, Albany, NY, for Defendant.

## DECISION AND ORDER

SMITH, District Judge.

Chrysler Financial Company, LLC ("Defendant" or "CFC"), seeks attorneys' fees from Pride Hyundai, Inc., Blackstone

Subaru, Inc., d/b/a Pride Hyundai of Seekonk, Pride Dodge, Inc., and Pride Chrysler–Plymouth, Inc. (collectively "Plaintiffs" or "Pride"), following resolution of the underlying matter in CFC's favor both in this Court and on appeal to the First Circuit, *Pride Hyundai, Inc. v. Chrysler Fin. Co., LLC*, 263 F.Supp.2d 374 (D.R.I.2003), *aff'd*, 369 F.3d 603 (1st Cir.2004). Pride argues, among other things, that CFC is precluded from making its case for attorneys' fees at this late date because the fees claimed by CFC constitute an element of damages that should have been proven at trial, and CFC failed to carry its consequent burden. This Court agrees, and therefore denies Defendant's Request for Attorneys' Fees.[1]

## I. *Background*

A brief overview of the facts is sufficient to pave the way for analysis of this motion. Those who crave more will find it in the preceding opinions of this Court and the First Circuit.

As a consequence of the decay of their business relationship, Pride, an automobile dealership, sued CFC, its lender, "for tortious interference with prospective contractual relations, breach of the implied covenant of good faith and fair dealing, violation of the Massachusetts consumer protection statute, and declaratory relief." *Pride*, 263 F.Supp.2d at 378. CFC counterclaimed "for a declaration of its rights and its contractually contemplated attorneys' fees." *Id.* at 378. Specifically, Pride alleged CFC improperly withheld release of CFC's security interests in Pride's inventory, thus precluding Pride from consummating alternative financing agree-

ments with other lenders. *See id.* at 378 n. 4 (noting that CFC's refusal to release its security interests in Pride's vehicles "lie[s] at the heart of this case"). This Court held that CFC was entitled to maintain its security interests in Pride's inventory until it received adequate payment or alternate security to cover the liability to which CFC was exposed under its agreements with Pride, which were, at that time, secured by CFC's interests in Pride's inventory. *Id.* at 392 ("[I]t is CFC's right under the Security Agreement and Master Credit Agreements to keep its UCC filings in place until and unless Pride posts some satisfactory alternate security to replace those UCC filings."). Based in large part upon this conclusion, this Court found in favor of CFC on all claims. *Id.* at 400. The Court reserved judgment on the issue of attorneys' fees, having "heard no evidence or argument on this issue at trial." *Id.* at 399. On appeal, the First Circuit upheld this Court's ruling. *Pride*, 369 F.3d at 606.

## II. *Discussion*

■■■ Attorneys' fees can be either an element of damages to be proven at trial or a collateral matter to be determined following adjudication of the relevant claims. *See Clarke v. Mindis Metals, Inc.*, 99 F.3d 1138, 1996 WL 616677, at *3, 9 (6th Cir.1996) (unpublished) ("Typically, attorney's fees are collateral to the merits and are awarded only after the entry of judgment.... [However, t]he claim for attorney's fees in this case is clearly the sort of claim that was an element of damages to be proved at trial.").[2] When attorneys'

---

**1.** Pride also argues CFC should be precluded from receiving attorneys' fees because "CFC failed to comply with F.R.C.P. 26(a) by failing to produce any invoices, documents, or even preliminary calculations regarding the legal services performed and the fees charged for such service." (Pls.' Opp. at 2.) Because this Court rules in Pride's favor on the issue of

attorneys' fees on the basis of CFC's failure to carry its burden as to entitlement to attorneys' fees, the issue of compliance with Rule 26(a) of the Federal Rules of Civil Procedure need not be addressed.

**2.** This distinction between "collateral" and "integral" attorneys' fees has been held to be

fees are a collateral matter, Rule 54(d)(2) of the Federal Rules of Civil Procedure provides that such "[c]laims for attorneys' fees ... shall be made by motion ... filed no later than 14 days after entry of judgment." However, when attorneys' fees are sought under the terms of a contract, they can become analogous to any other claim for contract damages. *See Clarke,* 99 F.3d 1138, 1996 WL 616677, at *3 ("In this case, attorney's fees are analogous to damages for breach of the lease ...."); *id.* at 99 F.3d 1138, 1996 WL 616677, *9 ("The 'substantive law,' i.e., the contract, placed the attorney's fees claim at the heart of the case; they were not a collateral matter."); *see also* Fed.R.Civ.P. 54(d)(2)(A) ("Claims for attorneys' fees ... shall be made by motion *unless* the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial.") (emphasis added); Fed. R.Civ.P. 54(d)(2) advisory committee's note (1993 Amendment) ("[Rule 54(d)(2) ] does not, however, apply to fees recoverable as an element of damages, as when sought under the terms of a contract; such damages typically are to be claimed in a pleading and may involve issues to be resolved by a jury."). The award of attorneys' fees in such a situation can thus be denied completely due to a failure on the part of the party seeking them to carry its burden of proof at trial.

■ CFC claims attorneys' fees pursuant to Section 6.0 of the Security Agreement and Master Credit Agreements between CFC and Pride. The relevant portions of the Security Agreement and Master Credit Agreements read as follows:

6.0 *Events of Default and Remedies/Termination*—... [CFC] may ... terminate this Agreement ... upon the occurrence of any of the following events (each hereinafter called an "Event of Default")....

(a) [Pride] shall fail to make any payment to [CFC] ...;

(b) A tax lien ... shall have been filed against any of [Pride]'s property ...;

(c) In the event [CFC] deems itself insecure ...;

(d) Termination of any franchise authorizing [Pride] to sell Vehicles;

(e) A misrepresentation by [Pride] ...; or

(f) [Pride], without [CFC]'s prior written consent, shall guarantee ... or otherwise become surety for ... the obligations of others....

Upon the occurrence of an Event of Default, [CFC] may take immediate possession of said Vehicles without demand or further notice and without legal process; and for the purpose and furtherance thereof, [Pride] shall, if [CFC] so requests, assemble the Vehicles and make them available to [CFC] at a reasonably convenient place designated by [CFC] and [CFC] shall have the right, and [Pride] hereby authorizes and empowers [CFC] to enter upon the premises wherever said Vehicles may be, to remove same. In addition, [CFC] or its assigns shall have all the rights and remedies applicable under the Uniform Commercial Code or under any other statute or at common law or in equity or under this Agreement. Such rights and remedies shall be cumulative. [Pride]

---

not relevant for the purposes of determining whether a judgment is final so as to allow parties to appeal. *See* 15B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3915.6, at 323, 329 (2d ed.1992) (citing *Budinich v. Becton*

*Dickinson & Co.,* 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988)). Consequently, parties may (as they did in this case) pursue an appeal of a matter even though the issue of attorneys' fees has yet to be resolved.

hereby agrees that it shall pay all expenses and reimburse [CFC] for any expenditures, including reasonable attorneys' fees and legal expenses, in connection with [CFC]'s exercise of any of its rights and remedies under this Agreement.

(Pls.' Resp. and Opp'n Ex. A at 3.)

CFC argues that withholding release of its security interests in Pride's inventory constituted exercise of one of its rights under the Security Agreement and Master Credit Agreements, and thus legal fees incurred in litigating the appropriateness of such withholding of release ·were covered under Section 6.0. Specifically, CFC argues that:

[T]he Court acknowledged that Section 6.0 of the Security Agreement and Master Credit Agreements authorized CFC to collect its attorneys' fees and expenses under circumstances where CFC exercised its rights under these Agreements. Moreover, the Court determined that the source of the right enforced by CFC, and which caused this litigation, arose directly from the Security Agreement and Master Credit Agreements. This finding by the Court triggers CFC's right to recover its attorney's fees and expenses in this matter.

(Defs.' Reply Mem. at 2 (internal citations omitted).) Well, not exactly. The precise language of this Court that CFC refers to is as follows:

Moreover, the source of the right enforced by CFC, which led to this litigation, does not ultimately spring from paragraph 3.1 of the Vehicle Financing Agreements.... Instead, it is CFC's right under the Security Agreement and Master Credit Agreements to keep its

UCC filings in place until and unless Pride posts some satisfactory alternate security to replace those UCC filings. *Pride,* 263 F.Supp.2d. at 392. The conclusion that CFC's right to withhold release of its security interests in Pride's inventory springs from the Security Agreement and Master Credit Agreements does not lead inexorably to the conclusion that the Security Agreement and Master Credit Agreements guarantees CFC recovery of its attorneys' fees for doing so. The most reasonable reading of the attorneys' fees provision is that CFC may seek attorneys' fees when they are incurred in connection with actions taken in response to a default. *See Kottis v. Cerilli,* 612 A.2d 661, 668 (R.I.1992) ("When the terms of a contract are construed 'unless a plain and unambiguous intent to the contrary is manifested, the words used in the contract are assigned their ordinary meaning.' ") (quoting *Westinghouse Broad. Co. v. Dial Media, Inc.,* 122 R.I. 571, 410 A.2d 986, 991 (1980)); *accord Natick Vill. Condo. Trust v. Town of Natick,* No. MICV9904497E, 2003 WL 21781397, at *3 (Mass.Super. July 23, 2003).[3] The section providing for payment of attorneys' fees is entitled "Events of Default and Remedies/Termination." The paragraph within that section that contains the attorneys' fees language begins with: "Upon the occurrence of an Event of Default." That paragraph then goes on to set forth the actions CFC may take in response to an event of default. Those actions include taking possession of Pride's vehicles and "all the rights and remedies applicable under the Uniform Commercial Code or under any other statute or at common law or in equity or under this Agreement." The final sentence of that final paragraph of Section 6.0

---

**3.** The Court cites both Rhode Island and Massachusetts law to indicate that there is no conflict of law between these jurisdictions on the issue. *See Pride,* 263 F.Supp.2d at 388

("[W]here there is no conflict of law that would necessitate choosing between two states, the conflict of law analysis becomes unnecessary.").

then declares: "[Pride] hereby agrees that it shall pay all expenses and reimburse [CFC] for any expenditures, including reasonable attorneys' fees and legal expenses, in connection with [CFC]'s exercise of any of its rights and remedies under this Agreement." At best, these words are ambiguous as to whether they grant CFC a right to attorneys' fees for *any* dispute arising under the Security Agreement and Master Credit Agreements (as CFC would have it), or simply give CFC a right to reimbursement of attorneys' fees incurred in connection with curing a default as a form of damages. To the extent there is ambiguity, the Court must construe the language against the drafter. *See R.I. Depositors Econ. Prot. Corp. v. Coffey & Martinelli, Ltd.*, 821 A.2d 222, 226 (R.I. 2003); *Merrimack Valley Nat'l Bank v. Baird*, 372 Mass. 721, 363 N.E.2d 688, 690 (1977). It was CFC's burden to prove its entitlement to attorneys' fees in this case. It submitted no evidence on this point at trial other than a copy of the Security Agreement and Master Credit Agreements. Given the ambiguity of Section 6.0, and the lack of record evidence on point, this Court cannot conclude that the final sentence of Section 6.0 should be read to apply to any exercise of a right under the Security Agreement and Master Credit Agreements, as opposed to the enforcement of one of the rights explicitly listed in Section 6.0.

■ CFC, however, argues alternatively that it did take actions in response to defaults by Pride, and at a minimum it should be reimbursed for fees associated with these actions. It is true that Pride defaulted during the course of the parties' tit-for-tat escalating dispute. *See Pride*, 263 F.Supp.2d at 385 ("For the next few months, Pride demonstrated its growing displeasure with CFC (in particular, its displeasure with CFC's demand of the 1.5% security deposit against potential future retail charge backs) by intentionally defaulting on various requirements under its wholesale agreements. Specifically, Pride refused to provide monthly financial statements to CFC, refused to attempt to resolve Pride's working capital or net worth shortages, and refused to allow CFC access to its books and records at the individual dealerships.") (internal citation omitted). But the action taken by CFC in response to Pride's default, *see id.* at 385–86 (noting that CFC's response to Pride's defaults was to place Pride on "Finance Hold"), was not action litigated in this case, *see id.* at 392. CFC's argument thus stalls for several reasons. First, Pride's defaults were in response to CFC's refusal to release its security interests, not precedent to it. *See id.* at 385. Thus, the issue at the heart of the case was joined long before Pride feebly attempted to get back at CFC by intentionally defaulting. Second, placing Pride on Finance Hold was a simple accounting maneuver that could not, in itself, have generated any significant fees (CFC certainly did not present any specific evidence of fees incurred in placing Pride on Finance Hold). Finally, even if an argument could be made that there was some connection between the fees CFC is seeking in this case and Pride's default under the Security Agreement and Master Credit Agreements, that argument should have been made at trial.

■ CFC argues that the issue of attorneys' fees could only be addressed after the Court ruled on whether CFC had exercised its rights under the Security Agreement and Master Credit Agreements. However, this is not a typical "prevailing party" case, where the only issue to be resolved as to entitlement to attorneys' fees is who prevails at trial. Rather, in this case, CFC could prevail at trial and yet not be entitled to attorneys' fees. Because the attorneys' fees in this case were in the nature of damages, CFC had the

burden of proving at trial that it was contractually entitled to those fees it sought in its counterclaim.

Most of the cases CFC cites to support its position are distinguishable precisely on this ground. For example, CFC cites *Capital Asset Research Corp. v. Finnegan,* 216 F.3d 1268 (11th Cir.2000), for the proposition that it could wait until after trial to pursue the issue of attorneys' fees. In *Capital Asset,* the Eleventh Circuit held that failure to plead a claim for attorneys' fees did not constitute a jurisdictional defect precluding award of such fees in light of Fed.R.Civ.P. 54(c), which states that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." However, the contract provision providing for attorneys' fees in that case was of the "prevailing party" variety—the only issue as to entitlement was which party prevailed. Furthermore, the parties in *Capital Asset* "agreed during the trial ... to the bifurcation of attorneys' fees for later hearing." *Id.* at 1271. Pride has agreed to no such bifurcation here.

CFC also cites a number of cases for the proposition that under Massachusetts and Rhode Island law, CFC is entitled to recover attorneys' fees following a determination on the merits. (Def.'s Reply Mem. at 10.) However, all but one of these cases are also distinguishable as "prevailing party" attorneys' fees cases. *See Northern Heel Corp. v. Compo Indus., Inc.,* 851 F.2d 456, 475 (1st Cir.1988) (prevailing party entitled to attorneys' fees pursuant to contract); *MIF Realty, L.P. v. Fineberg,* 989 F.Supp. 400, 401 (D.Mass.1998) (same); *Gooding Realty Corp. v. Bristol Bay CVS, Inc.,* No. PD 99–4987, 2002 WL 169200 (R.I.Super. Jan. 22, 2002) (unpublished) (discussing only reasonableness of, as opposed to entitlement to, attorneys' fees).

To the extent that *Grotta v. Grotta,* No. PD 01–5494, 2002 WL 31324109 (R.I.Super. Sept. 20, 2002) (unpublished), could be read to support the proposition that Rhode Island courts allow for the determination of entitlement to attorneys' fees to occur following trial, there are two reasons why this case is not applicable here. First, the attorneys' fees at issue in *Grotta* were not sought under the terms of a contract, and thus did not raise the issue of whether proof of entitlement to attorneys' fees under a contract must be proven at trial. *See id.* at *1 (setting forth statute under which attorneys' fees were sought). Second, while state law governs the substantive analysis of contract provisions, federal law governs the procedure. The issue here is one of procedure to the extent of determining whether CFC may prove its entitlement to attorneys' fees under the contract post trial. *See Warranty Corp., Inc. v. Hans,* No. CIV. A. 98–0889–MJ–S, 2000 WL 284261, at *6 (S.D.Ala. Mar. 9, 2000) ("The plaintiffs in this diversity action seek attorneys' fees pursuant to contract. Accordingly, entitlement to such fees, and the amount thereof, is a question of state law, while the procedures for proving up such fees is governed by federal law."). Thus, even if *Grotta* could somehow be read to support CFC's claim that Rhode Island law allows for proof of entitlement to attorneys' fees under a contract post trial, this is a procedural question as to which the Court applies federal law.

Finally, this Court did not "set forth special procedures for determination of the attorneys' fees issue," (Def.'s Reply Mem. at 2.), that somehow relieved CFC of its responsibility to prove its contractual entitlement to attorneys' fees at trial. Rather this Court simply stated that:

As for CFC's request for attorneys' fees, as already noted, paragraph 6.0 of the Security Agreement and Master Credit Agreements authorizes CFC to collect

its attorneys' fees and expenses in connection with its exercise of any rights guaranteed under those agreements. Defendant properly asserted this demand as part of its counterclaim, *but the Court heard no evidence or argument on this issue at trial.* Defendant has addressed the issue in its Post–Trial Memorandum, but before ruling on it the Court will give Plaintiffs the opportunity to respond.... Thereafter, the Court will issue a supplementary order on this issue.

*Pride,* 263 F.Supp.2d at 399 (emphasis added). After hearing from both parties, the Court is now ruling on this issue, and concludes CFC did not carry its burden at trial.

### III. Conclusion

For the foregoing reasons, Defendant's Request for Attorneys' Fees is DENIED.

IT IS SO ORDERED.