**KISSINGER, INC., Plaintiff,**

v.

**Jaspal SINGH, Defendant.**

**No. 4:03–CV–19.**

United States District Court,
W.D. Michigan,
Southern Division.

Nov. 25, 2003.

Christopher E. Tracy, Howard & Howard Attorneys, P.C., Kalamazoo, MI, for Plaintiff.

Kevin J. O'Dowd, Dickinson Wright, PLLC, Grand Rapids, MI, for Defendant.

## OPINION

QUIST, District Judge.

### Background

Plaintiff, Kissinger, Inc., filed its complaint against Defendant, Jaspal Singh ("Singh"), on February 7, 2003, alleging various claims, including trademark infringement and unfair competition under both state and federal law, violation of the Michigan Consumer Protection Act, and breaches of a franchise agreement. Kissinger's claims arose out of a franchise agreement between the parties, pursuant to which Kissinger, as franchisor, granted Singh a Baguette de France Restaurant franchise. Kissinger alleged that it terminated Singh for violating the franchise agreement by: (1) failing to pay royalties when due as required by the franchise agreement; (2) failing to submit weekly sales reports; (3) selling unapproved products, maintaining unapproved vending machines, and engaging in unapproved conduct; (4) being involved in the establishment of a competing sandwich restaurant (Eurosub); and (5) divulging confidential information. (Compl. ¶ 23(a)-(e).) Kissinger also alleged that Singh continued to operate his Baguette de France restaurant after receiving a Notice of Termination from Kissinger. (Id. ¶ 32.) In addition to other relief, Kissinger requested an injunction precluding Singh from continuing to use the Baguette de France name, mark, or proprietary information and from owning or operating a business that competed with Baguette de France in violation of the non-competition provision of the franchise agreement.

On February 13, 2003, the parties entered into a stipulation in lieu of injunctive relief ("Stipulation"), which the Court adopted by an order issued the same date. The stipulation provided, among other things, that Singh would close his Baguette de France restaurant in Portage, Michigan, and take all steps necessary to de-identify his store as a Baguette de France restaurant, including removing all signs and items in and around the store bearing the Baguette de France name or mark. In addition, Singh was required to provide a full accounting to Kissinger for a final determination of any royalty payments, if any, owed to Kissinger. The stipulation also contemplated that Singh

would remodel his restaurant and open as an Indian grill-type restaurant bearing no resemblance to the Baguette de France restaurant. On May 30, 2003, Kissinger filed a voluntary dismissal without prejudice of those portions of Counts VI (violation of Michigan Uniform Trade Secrets Act), IX (breach of franchise agreement), X (unjust enrichment), and XI (accounting) that are based upon allegations involving Eurosub.

Kissinger has now moved for summary judgment, seeking the following relief: (1) entry of a permanent injunction consistent with the terms of the prior stipulation in lieu of injunctive relief; (2) past due royalties in the amount of $2,276.04; (3) attorney fees and expenses in the amount of $25,615.27; and (4) lost future royalties under the franchise agreement in the amount of $148,843.84. In response, Singh has filed a motion for summary judgment in which he requests that the Court dismiss Kissinger's remaining claims because they are either moot or seek damages to which Kissinger is not entitled under the franchise agreement.[1] More particularly, Singh contends that the claim for injunctive relief has been rendered moot by Singh's voluntary compliance with the Stipulation, that Kissinger voluntarily dismissed its claims relating to the Eurosub restaurant, and that Kissinger's claim for unpaid royalties should be dismissed as

moot because there is no dispute about the amount owed.

### *Summary Judgment Standard*

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### *Discussion*

### I. Singh's Motion for Summary Judgment

In his motion for summary judgment, Singh contends that the remaining

---

1. Singh incorrectly titles his motion as a motion for summary judgment for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). Singh's motion demonstrates a misunderstanding between a motion to dismiss under Rule 12(b)(6) and a motion for summary judgment under Rule 56. A motion to dismiss is used to test whether the complaint is sufficient to support a claim under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80

(1957)). In deciding a motion to dismiss for failure to state a claim, a court's review is limited to the pleadings. In contrast, a motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Because Singh relies upon affidavits and other matters beyond the complaint, his motion must be treated as a motion for summary judgment. Fed.R.Civ.P. 12.

claims in the case are either moot or must be dismissed because they seek damages to which Kissinger is not entitled. Singh notes that Kissinger's claims were based upon Singh's: (1) failure to make royalty payments; (2) sales or use of unapproved products and/or suppliers; and (3) involvement with Eurosub, a sandwich restaurant which allegedly competes with Baguette de France. In short, Singh asserts that Kissinger is entitled to no further relief relative to any of these claims because Singh has complied with the Stipulation by closing his Baguette de France restaurant and de-identifying his new restaurant as a Baguette de France store.

Singh is correct that Kissinger is not entitled to any further specific relief based upon the Eurosub allegations or the unapproved product allegations. As noted above, Kissinger voluntarily dismissed all claims based upon the Eurosub allegations. As for the unapproved product allegations, the Court notes that they do not form the basis of any specific claim alleged in the complaint. Rather, Kissinger's unapproved product allegation was one of the bases for Kissinger's pre-litigation claims of default and termination. While the unapproved product claim may have been part of the mix of facts supporting Kissinger's request for injunctive relief, it is not embodied in a specific claim that may be dismissed.[2]

The Court rejects Singh's argument that the unpaid royalty claim should be dismissed. Singh does not dispute that he owes Kissinger past due royalties, but he characterizes the royalty issue as merely an accounting dispute and he claims that

he made repeated attempts to bring his royalty payments current by giving Kissinger a blank check and by depositing money into Kissinger's account. (Singh Aff. ¶ 5, Def.'s Br. Supp. Ex. B.) However, whether Kissinger is entitled to past due royalties, or even future royalties, remains an issue in this case. The Court has not made a determination on this issue, nor have the parties resolved it by stipulation. Moreover, the case is not moot because the Court has not yet ruled on Kissinger's request for permanent injunctive relief. Therefore, Singh's motion will be denied.

## II. Kissinger's Motion for Summary Judgment

### A. Permanent Injunctive Relief

■ Kissinger requests that the Court grant it permanent injunctive relief that would essentially mirror the terms of the Stipulation by enjoining Singh from using any Baguette de France name or mark and by requiring Singh to comply with the post-termination provisions of the franchise agreement until August 18, 2004, the duration of the eighteen-month period set forth in the franchise agreement. Singh contends that Kissinger's request for permanent injunctive relief is moot because Singh is no longer operating a Baguette de France restaurant and he is not engaging in any activity for which Kissinger seeks a permanent injunction. In addition, Singh points out that the Court never entered a temporary restraining order or preliminary injunction and that Kissinger never substantiated its claims relating to the Eurosub restaurant, which was also part of

---

**2.** Singh devotes a substantial portion of his brief to arguing that the Eurosub allegation, which has now proven to be unfounded, was the driving force behind the lawsuit and that the past due royalty claim and unapproved product claims were either minor issues or non-issues that could have been resolved outside of litigation. While that may be true,

Singh cannot deny that Kissinger had valid claims for past due royalties and federal and state trademark infringement, which were also asserted in the complaint. Moreover, although Singh suggests that Kissinger improperly terminated his franchise, he has not asserted a counter-claim for improper termination.

the relief Kissinger sought in its emergency motion for a temporary restraining order.

The Court concludes that Kissinger's request for permanent injunctive relief is not moot. Although Singh is not currently operating a Baguette de France restaurant, a permanent injunction will ensure that he does not do so in the future. In this regard, it should be noted that Singh continued to operate his restaurant as a Baguette de France restaurant until shortly after Kissinger filed this action, even though Kissinger had sent Singh a written confirmation of its termination of the franchise agreement several weeks earlier. (1/24/03 Confirmation Notice, Def.'s Br. Supp. Ex. A.) Moreover, Singh's argument fails to consider that he is still bound by the post-termination provisions of the franchise agreement. Therefore, the Court will grant the requested relief.

## B. Unpaid Royalties

█ Kissinger has presented evidence showing that Singh owes Kissinger $2,276.04 in past due royalties as calculated under the terms of the franchise agreement. (Kissinger Aff. ¶¶ 1, 2, Pl.'s Br. Supp. Ex. C.) Although Singh asserts that questions of fact remain regarding Singh's attempts to bring his account current and Kissinger's method of accounting, Singh has not presented any evidence showing that Kissinger is not entitled to the amount claimed. Singh states:

> While I cannot verify or confirm how [Kissinger] arrived at this number, ... I would be willing to accept this figure, so long as it accounts for and deducts the dollar amount of the food and restaurant supplies that Mr. Kissinger agreed to reimburse me for which he removed from my restaurant upon terminating by BDF franchise.

(Singh Aff. ¶ 14.) Singh has offered no evidence showing that the $2,276.04 figure is incorrect. Moreover, Singh has not offered any evidence to substantiate his claim that he is entitled to a credit for the value of supplies that Kissinger removed from his store. Therefore, Kissinger is entitled to recover $2,276.04 in past due royalties.

## C. Future Royalties

Kissinger also contends that it is entitled to recover future royalties for the duration of the ten-year term of the franchise agreement. Kissinger asserts that it is entitled to recover damages in the amount of $148,843.84 as expectation damages for royalties it would have received but for Singh's breach of the franchise agreement. Singh responds that Kissinger is not entitled to future royalties because Kissinger unreasonably terminated the franchise agreement without a sound basis for doing so. Singh points out that the Eurosub claim was groundless, that the past-due royalty claim was basically an accounting dispute rather than a material breach, and that Kissinger failed to substantiate its unapproved product claim.

Neither party has cited, nor has the Court found through its own research, any Michigan case discussing whether a franchisor is entitled to recover future royalties under a franchise agreement after terminating the franchise agreement based upon the franchisee's failure to timely pay royalties. The Court of Appeal of California addressed the issue in *Postal Instant Press, Inc. v. Sealy*, 43 Cal.App.4th 1704, 51 Cal.Rptr.2d 365 (1996). In that case, the franchisor and franchisees entered into a franchise agreement having a twenty year term. After several years, the franchisees failed to make timely payments under the franchise agreement. The franchisees paid some of the fees late and negotiated a note for the balance of the past due payments. When the franchisees again fell behind in their payments, the

franchisor declared the past due payments a material breach and sent a notice of termination to the franchisees. The franchisor subsequently filed suit seeking to recover both the unpaid past royalties and future royalties for the remaining term of the franchise agreement. The trial court awarded the franchisor both past due royalties and future royalties for expectation damage. The appellate court held that an award of future royalties was improper under the circumstances. The court stated:

> In what apparently is a case of first impression not only in California but the entire nation we consider whether a franchisee's failure to timely pay some past royalty fees entitles a franchisor to both terminate the franchise agreement and receive an award of over seven years in "future lost royalties." We conclude the franchisee's breach was not the "proximate" or "natural and direct" cause of the franchisor's loss of *future* royalties in this case. Furthermore, in the circumstances of this case, these damages are "excessive", "oppressive", and "disproportionate" to the loss. Accordingly we hold these lost future royalties are not a proper element of contract damages in the circumstances of this case.

*Id.* at 1706, 51 Cal.Rptr.2d at 366. In discussing the lack of proximate cause between the franchisee's breach and future lost royalties, the court observed:

> Here the franchisee breached the franchise contract by failing to timely make some past royalty payments. There is a "natural and direct" causal connection between the franchisee's breaches and the loss of those past royalty payments. As a direct result of these breaches the franchisor lost those past royalty payments. To be made "whole" or in the other terminology, to gain the "benefit of its bargain" the franchisor must re-

ceive those past, unpaid royalty payments.

> But the franchisee's failure to timely make these past royalty payments is not a "natural and direct" cause of the franchisor's failure to receive future royalty payments. Indeed the franchisor could have remained entitled to those future royalties for the full term of the franchise contract even if it sued to collect the past payments. Nothing in the franchisee's failure to pay past royalties in any sense prevented the franchisor from earning and receiving its future royalty payments. No, it was the franchisor's own decision to terminate the franchise agreement that deprived it of its entitlement to those future royalty payments. At worst, if the franchisor had not terminated the franchise agreement it might have been required to sue again or perhaps again and again to compel the franchisee to pay those future royalties in a timely fashion as those royalties accrued.

(*Id.* at 1710–11, 51 Cal.Rptr.2d at 369–70) (footnote omitted). Other courts have reached the same conclusion. *See Burger King Corp. v. Hinton, Inc.*, 203 F.Supp.2d 1357, 1366 (S.D.Fla.2002) (applying Florida law and concluding that the franchisee's failure to pay past due royalty and rent payments did not proximately cause the franchisor's loss of future profits because it was the franchisor's act of terminating the franchise agreements that caused the loss); *I Can't Believe It's Yogurt v. Gunn*, No. Civ.A. 94–OK–2109–TL, 1997 WL 599391, at *23–24 (D.Colo. Apr. 15, 1997) (finding *Sealy* "persuasive" and concluding that the franchisor's termination of the franchise agreement proximately caused the franchisor to lose future profits). In contrast, the Court has not found any case that has reached the opposite result.

The Court agrees with the *Sealy* court's analysis that where a franchisor termi-

nates a franchise agreement based upon the franchisee's failure to make royalty payments, the franchisor's decision to terminate the franchise agreement is the proximate cause of the franchisor's lost future royalty payments. This analysis is both persuasive and consistent with Michigan law on contract damages. *See Alan Custom Homes, Inc. v. Krol,* 256 Mich. App. 505, 512, 667 N.W.2d 379, 383 (2003) ("The party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach."). Moreover, this case is factually consistent with *Sealy* and the other cases cited above, because the evidence in the record before the Court shows that while Kissinger cited three reasons for its decision to terminate the franchise agreement, late royalty payments (including failure to timely submit financial reports) was the only sustainable ground for termination. Therefore, the Court concludes that Kissinger is not entitled to recover future royalty payments as damages because the proximate cause of any such loss was Kissinger's decision to terminate the franchise agreement.

### D. Attorney Fees

Kissinger also seeks to recover its attorney fees based upon paragraphs 3.f. and 17.k of the franchise agreement, which provide:

> f. *Attorney's Fees.* If you breach this Agreement, and we incur legal fees to notify you of the breach and/or require you to pursue a cure of that breach, we will invoice you, and you agree to pay our reasonable and documented legal fees, due to your breach. For purposes

of this Par. 3.f, the standard for reasonable legal fees will be those charged in the Chicago, Illinois area by a lawyer skilled in franchise law.

> k. If either you or we bring any legal action to construe or enforce the terms of this Agreement, including its termination provisions, or to obtain damages or other relief, injunctive or otherwise, to which either party may be entitled by virtue of this Agreement, the prevailing party will be paid its reasonable attorneys' fees, court costs and expenses by the other party.

(Franchise Agreement ¶¶ 3.f., 17.k, Pl.'s Br. Supp. Ex. A.) Kissinger supports its request for fees, expenses, and costs in the amount of $25,615.27 with an affidavit of counsel and billing statements. (Tracy Decl., Pl.'s Br. Supp. Ex. D.)

Singh contends that Kissinger is not entitled to recover its attorney fees and costs because Kissinger is not the prevailing party. Singh argues that Kissinger is not a prevailing party because Kissinger dismissed its claims based upon the Eurosub allegations which, Singh contends, were the driving force behind Kissinger's decision to file a complaint in federal court. Singh contends that the January 9, 2003, letter from Kissinger's counsel notifying Singh of the termination and the subsequent letter of January 24, 2003, from Kissinger's counsel confirming the termination show that Kissinger's main concern was Singh's alleged operation of the competing Eurosub restaurant. Singh also contends that Kissinger has failed to offer evidence to prove its unapproved product claim and that the dispute regarding past due royalties is so minor that Kissinger cannot be considered a prevailing party.[3]

*Mindis Metals, Inc.,* 99 F.3d 1138, 1996 WL 616677, at *8 (6th Cir.1996). In light of the parties' apparent agreement that the issue

---

3. Neither party has raised the issue of whether an award of attorney fees under a contract provision is to be decided by the judge or the jury. The Sixth Circuit has recognized that courts are split on this issue. *See Clarke v.*

Kissinger responds that it must be considered a prevailing party for several reasons. Kissinger argues that it was required to file this action in order to force Singh to close the Baguette de France restaurant and achieved the closure within several days after filing suit. Kissinger points out that Singh had been using unapproved food items and sauces for several weeks prior to termination and it was imperative for Kissinger to move quickly to close Singh's store in order to preserve Baguette de France's reputation. Finally, Kissinger notes that it is a prevailing party, if for no other reason, because it prevailed on its claim for late royalty payments.

■ The first of the two attorney fee provisions cited above relates to attorney fees the franchisor incurs in order to notify the franchisee of the breach or to obtain a cure of the breach by the franchisee. Such fees are independent of those incurred in connection with litigation, which would be covered by the "prevailing party" provision. With regard to the notice/cure provision, Kissinger is entitled to recover reasonable fees incurred in order to notify Singh of the breach and to attempt to obtain his compliance with the franchise agreement. As mentioned above, there is no dispute that Singh was in breach of the agreement because he failed to make royalty payments and report his gross revenues on a timely basis. Kissinger has not separated those fees from the fees incurred in the litigation. Based upon its review of the billing statements, however, the Court determines that attorney Marc Blumenthal, who performed the pre-litigation services of preparing the notices of default and termination, billed Kissinger $1,155 for fees (5.25 hours × $220/hr.) and $18.63 for expenses. The Court determines that attorney Blumenthal's hourly rate is reasonable for a franchise law lawyer practicing in the Chicago area and also compares favorably with Singh's counsel's hourly rate.[4] With regard to the number of hours incurred, the Court finds that the number of hours should be reduced to account for the fact that some of the time was spent on the unapproved product and Eurosub issues, which Singh has shown were improper bases for termination.[5] Therefore, the Court will reduce the hours by 50% and award Kissinger fees and expenses for pre-litigation services in the amount of $596.13.

■ The remaining question is whether Kissinger is a "prevailing party" for purposes of the second attorney fee provision. Neither party has cited any Michigan case construing a "prevailing party" attorney fee provision in a franchise agreement or other contract, and the franchise agreement does not define that term. In *Clarke v. Mindis Metals, Inc.*, 99 F.3d 1138, 1996 WL 616677 (6th Cir.1996), the Sixth Circuit held that when the parties use the term "prevailing party" in a contractual provision for recovery of attorney fees but fail to define the term, the parties intend the term "to have the meaning given it by the case law under Rule 54(d)(1)." *Id.* 99 F.3d 1138, 1996 WL 616677, at *9.

should be decided by a judge, it is unnecessary for the Court to resolve this issue.

4. Although Singh's counsel did not specifically state his hourly rate, the Court extrapolated a rate of about $225 per hour based upon the statements by Singh's counsel in his affidavit.

5. Kissinger has dismissed the Eurosub claims, presumably because it cannot offer evidence to support those allegations. In addition, Singh states in his affidavit that he discontinued selling French fries several months before Kissinger sent the Notice of Default and that he never purchased any products from unapproved suppliers. (Singh Aff. ¶¶ 6, 7.) Kissinger did not offer any evidence to refute Singh's evidence on these issues.

Cases interpreting Rule 54(d)(1) generally state that "the prevailing party is the party in whose favor judgment was entered, even if that judgment does not fully vindicate the litigant's position in the case." 10 James Wm. Moore et al., *Moore's Federal Practice* § 54.101[3] (3d ed.2003); *see also Zackaroff v. Koch Transfer Co.*, 862 F.2d 1263, 1265–66 (6th Cir.1988) (stating that costs are awarded "even when the successful party is not awarded his entire claim"). The Court also finds it appropriate to look to decisions interpreting the term "prevailing party" in the statutory attorney fees context. One statute containing the "prevailing party" language for attorney fees is 42 U.S.C. § 1988(b), which provides that in actions to enforce various statutory rights, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." In *Texas State Teachers v. Garland Independent School District*, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), the Supreme Court stated that "[a] prevailing party must be one who has succeeded on any significant claim affording it some of the relief sought, either *pendente lite* or at the conclusion of the litigation." *Id.* at 791, 109 S.Ct. at 1493. The Court concluded that, "at a minimum, to be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Id.* at 792, 109 S.Ct. at 1493.

The Court determines that Kissinger is a prevailing party in the contexts of both Rule 54(d)(1) and § 1988(b) because, as set forth above, the Court has determined that Kissinger is entitled to judgment in its favor on the past due royalty claim and its request for permanent injunctive relief. While it is true that Kissinger was unsuccessful on both the Eurosub claim and on its claim for future royalties, Kissinger obtained what is probably the most important relief—forcing Singh to close his Baguette de France restaurant and de-identify his business with the name and the mark—almost immediately after filing suit, albeit through a stipulation rather than through an order after a hearing.

The Court's determination that Kissinger is a prevailing party does not automatically mean that Kissinger is entitled to all of its requested fees and expenses.[6] The Court will employ the "lodestar method" used in determining reasonable attorney fees in civil rights cases to determine a reasonable fee in this case. The starting point in the lodestar analysis is the "lodestar figure," which is the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *See Wayne v. Vill. of Sebring*, 36 F.3d 517, 531 (6th Cir.1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). Duplicative and unnecessary hours should be excluded in calculating reasonable hours. *Id.* Once the court has determined the lodestar figure, it must determine

**6.** In determining whether a fee is reasonable, a court may consider: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the service; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent. *Zeeland Farm Servs., Inc. v. JBL Enters., Inc.*, 219 Mich.App. 190, 198 n. 3, 555 N.W.2d 733, 737 n. 3 (1996) (citing Mich. Rules of Prof'l Conduct R. 1.5(a)).

whether the fee should be adjusted in light of the results obtained, an inquiry which involves two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1940.

With regard to the first inquiry, the hourly rate, the Court notes that attorney Blumenthal's rate was $220 per hour and the attorneys at the Howard & Howard firm billed at a rate of $225, with the exception of a minor amount of work performed either by a new associate or a paralegal (SFJ) at the rate of $95 per hour. Singh has not objected to any of the requested hourly rates, and the Court, being generally familiar with prevailing rates in the local community based upon attorney fee awards it has made in other cases, finds the requested rates to be reasonable.

The affidavit and billing statements submitted by Kissinger's counsel shows that attorney Blumenthal spent a total of 23 hours on the litigation, while the Howard & Howard firm spent 81.2 hours on the litigation. Although Singh contends that $2,784 would be a reasonable amount of fees for prosecuting the non-Eurosub claims, Singh has not raised any specific objections to the hours expended by Kissinger's counsel on various litigation tasks. However, based upon its review of the billing entries, the Court concludes that the hours spent on the complaint, motion for temporary restraining order, and proposed temporary restraining order were excessive. The billing entries show that through the date the complaint was filed, Kissinger's attorneys billed a total of 52 hours, with 32.2 incurred by the Howard & Howard firm and the remaining 19.8 incurred by attorney Blumenthal. Even though the complaint was fairly lengthy

and was accompanied by a sixteen-page motion for temporary restraining order and preliminary injunction and four-page proposed order, the Court concludes that 40 hours of time would have been sufficient to interview the client and other key witnesses, conduct any necessary research, and draft and finalize the complaint and motion. The Court will eliminate 12 hours, split evenly between attorney Blumenthal and the Howard & Howard firm. Therefore, the total lodestar figure is $20,400 (Howard & Howard firm (73.2 hours × $225/hr. + 2.0 hours × $95/hr. = $16,660) + Blumenthal (17 hours × $220/hr. = $3,740)).

The remaining question is whether the lodestar figure should be adjusted for the results obtained. As noted above, an adjustment is proper where the plaintiff either failed to prevail on unrelated claims or failed to achieve a level of success commensurate with the hours expended. Singh argues, correctly, that Kissinger did not prevail on its claims based upon the Eurosub allegations. Those claims were not insubstantial, as they were the subject of five of the eleven counts in the complaint. Moreover, except for the calculation of the past due royalty, the case was essentially over once the parties signed the Stipulation and Singh performed his obligations thereunder. However, Kissinger continued to pursue the Eurosub claims and incurred additional fees. Based upon its review of the billing statements presented, the Court is unable to identify the number of hours attributable to the Eurosub claim but determines that a 50% reduction of fees is warranted in light of both Kissinger's lack of success on the Eurosub claim, the relatively small amount recovered, and the denial of recovery of future royalties. For the same reasons, the Court will apply the 50% reduction to Kissinger's claimed expenses. Therefore,

after applying the reduction, the Court will award Kissinger $10,200 in attorney fees and $437.32 in expenses for litigation-related services.

### Conclusion

For the foregoing reasons, the Court will deny Singh's motion for summary judgment. The Court will grant in part and deny in part Kissinger's motion for summary judgment. Kissinger's motion will be granted with respect to the request for a permanent injunction, past due royalties, and attorney fees and expenses in the amount of $11,233.45. The motion will be denied with respect to the request for future royalties.

An Order consistent with this Opinion will be entered.