COURT OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                      FORT
WORTH

 

 

                                           NO.
2-07-127-CV

 

 

PROGRESSIVE CHILD CARE                                                APPELLANTS

SYSTEMS,
INC.,

KARRY
L. DUNN, AND HEATHER

DUNN

                                                      V.

 

KIDS >R= KIDS INTERNATIONAL, INC.                                      APPELLEES

AND
PATRICK D. VINSON

                                                  ------------

 

              FROM
THE 211TH DISTRICT COURT OF DENTON COUNTY

 

                                                  ------------

 

                                  MEMORANDUM
OPINION[1]

 

                                                  ------------

I.  Introduction








Appellants Progressive Child
Care Systems, Inc., Karry L. Dunn, and Heather Dunn[2]
appeal the trial court=s judgment
based on a jury verdict in favor of Appellees Kids >R= Kids
International, Inc. and Patrick D. Vinson[3].  The verdict awarded Kids >R= Kids past-due and future royalty payments related to two franchise
agreements.  In three issues, Progressive
argues that there was legally and factually insufficient evidence to support
the amount of past and future royalties, that there was legally and factually
insufficient evidence that Progressive proximately caused the amount of
damages, and that the amount of damages are excessive.  We will affirm.

II.  Factual
and Procedural Background

In late November 1995,
Progressive entered into a franchise agreement with Kids >R= Kids to
operate a child-care facility in Plano, Texas. 
Per the agreement, Progressive would operate the child-care facility
under the name AKids >R= Kids.@








In early October 1999,
Progressive again contracted with Kids >R= Kids to
operate a second franchise.  In addition
to a second franchise agreement, Progressive signed an assignment, transfer of
franchise, and asset purchase agreement whereby Progressive would agree to
operate a child-care facilityClocated in Flower Mound, Texas, and formerly known as Fantastic Kids,
Inc.Cas a Kids >R= Kids franchise.  Among
Progressive=s
obligations under both franchise agreements was Progressive=s agreement to pay five percent of enrollment-derived gross revenues
to the franchisorCKids >R= Kids.  Both franchise agreements, as well as the
transfer agreement pertaining to Fantastic Kids, Inc., provide that the
franchise agreement=s initial
term was to be twenty-five years.

Ostensibly driven by the
belief that Kids >R= Kids provided poor organizational support for Progressive=s two franchises, Karry Dunn informed Vinson that Vinson either needed
to hire someone to better support the Akids and the franchisees, . . . let [him] take over the
state of Texas to help support the whole system, or just buy [him] out.@  In March 2002, Progressive
made its last royalty payment to Kids >R= Kids.  In early spring 2003, Progressive began
operating both of its child-care facilities under the name, ALegacy Learning Center.@

Kids >R= Kids sued
Progressive on October 3, 2003.  It
alleged breach of contract, breach of personal guaranty, fraud, and
conspiracy.  Kids >R= Kids also
sought a permanent injunction against Progressive=s operating the two child-care centers as anything other than Kids >R= Kids
centers but eventually withdrew this cause of action.








In addition to a general
denial, Progressive counterclaimed against Kids >R= Kids for
fraud, fraud in the inducement, intentional and negligent misrepresentation,
deceptive trade practices, and rescission.

At trial, Gregory SchuelkeCKids >R= Kids=s forensic
accountant and designated damages expertCtestified that he had examined Athe books and records@ pertaining to both the Plano and Flower Mound child-care centers.
Schuelke stated that he had examined over twenty different documents concerning
the two centers, including Kids >R= Kids=s petition, enrollment records for both centers, cash receipts,
deposit records, tax returns, tuition records, and royalty summaries.  Schuelke stated that he had also reviewed
Karry Dunn=s deposition
testimony.[4]

Schuelke testified that he
calculated past-due royalties for the Plano center at $316,662.00 and for the
Flower Mound center at $247,461.00.  He
also testified that his calculations for future royalties based on a continuing
contract through a twenty-five year agreement, and discounting to present day=s dollars, were $873,879.00 for the Plano center and $767,771.00 for
the Flower Mound center.








The jury returned a verdict
in favor of Kids >R= Kids on all claims.  The trial
court entered its judgment in favor of Kids >R= Kids and
against Progressive.  Based on the jury
verdict, the trial court awarded Kids >R= Kids
$1,385,008.72. This appeal followed.

III. Georgia Law Applies

As a preliminary matter,
Progressive argues that Georgia law applies to this case because the franchise
agreements state that they Ashall be governed by and construed in accordance with the laws of the
State of Georgia.@  We agree.

A trial court=s determination of choice of law is a question of law and is reviewed
de novo.  Pittsburgh Corning Corp. v.
Walters, 1 S.W.3d 759, 769 (Tex. App.CCorpus Christi 1999, pet. denied). 
Generally, the parties= contractual choice of law will be given effect if the contract bears
a reasonable relationship to the chosen state and no countervailing public
policy of the forum demands otherwise.  SAVA
Gumarska in Kemijska Industria D.D. v. Advanced Polymer Scis., Inc., 128
S.W.3d 304, 314 (Tex. App.CDallas 2004, no pet.). However, a preliminary motion must be filed
asking the court to apply another state=s laws.  Burlington N. and
Santa Fe Ry. Co. v. Gunderson, Inc., 235 S.W.3d 287, 289 (Tex. App.CFort Worth 2007, pet. withdrawn) (citing Pittsburgh Corning Corp.,
1 S.W.3d at 769); see also Tex. R. Evid. 202.








In this case, both parties
filed motions asking the trial court to take judicial notice of Georgia
law.  Both parties= motions contain extensive Georgia case law pertaining to breach of
contract and damages.  Further, Kids >R= Kids is a
Georgia corporation.  The franchise
agreements in this case bear a reasonable relationship to the state of
Georgia.  Thus, we will analyze
Progressive=s issues
under Georgia law. 

IV.  Progressive=s Breach Entitled Kids >R= Kids to Seek Damages








In its second issue,
Progressive argues that there was legally and factually insufficient evidence
that it proximately caused the amount of damages awarded for past-due and
future royalty payments.  The gist of
Progressive=s argument
is that it could not have proximately caused any damages arising from the
failure to make royalty payments after late springBearly winter 2003, because the franchise agreement had been terminated
by the franchisor=s president,
Vinson.  Progressive cites what it labels
a Afinding as a matter of law@ by the trial court, in which the trial court discussed during the
directed verdict stage of trial, and again during the hearing on entering its
judgment, the franchise agreement between Progressive and Kids >R= Kids as
having been terminated during that time frame.[5]  Progressive also cites Vinson=s trial testimony where he states Aas far as I=m concerned,
I wouldn=t have [the Dunns] back as a franchisee@ as evidence that it was VinsonCthe franchisorCwho
terminated the franchise agreement.

Based on these
presuppositions and admitting that neither Georgia nor Texas has decided the
issue of whether a franchisee can be liable to pay damages for past-due and
future royalties when there has been a breach of contract, Progressive relies
on Postal Instant Press, Inc. v. Sealy, 43 Cal. App. 4th 1704, 1709
(1996), and its progeny for the proposition that a franchisor cannot recover
past-due and future royalties after the termination of a franchise
agreement.  See also Kissinger, Inc.
v. Singh, 304 F. Supp. 2d 944, 951 (W. D. Mich. 2003); Burger King Corp.
v. Hinton, Inc., 203 F. Supp. 2d 1357, 1366 (S.D. Fla. 2002); I Can=t Believe It=s Yogurt v. Gunn, 1997 WL 599391, No.
Civ. A. 94‑OK‑2109‑TL (D. Colo. 1997).  Contra Am. Speedy Printing Ctrs.,
Inc. v. AM Mktg, Inc., 69 Fed. App=x 692, 699 (6th Cir. 2003) (designated not for publication by the
court).








In Sealy, the
franchisee failed to make several royalty payments as specified in the
franchise agreement, and the franchisor declared that the franchisee was in
breach and terminated the agreement.  Sealy,
43 Cal. App. 4th at 1707.  The Sealy court
found that the franchisor could not recover for future profits where it had
terminated the agreement because the damage was proximately caused by the
franchisor=s
termination rather than by the franchisee=s breach.  Id. at
1713.  In addition, the Sealy
court found that an award of future profits under those circumstances would
amount to Aunreasonable,
unconscionable or grossly oppressive@ damages.  Id. at
1714.  According to the Sealy
court, the possibility of an award of future profits would provide the
franchisor with a bludgeon in every contract dispute, because unless the
franchisee complies, it is faced with the threat of the franchisor terminating
the agreement and being awarded future profits. 
Id. at 1709.  But,
significantly, the Sealy court expressly refused to consider whether
damages for future profits would be available if the franchisee
terminated the agreement.  Id. at
1710 n.2.  Moreover, the Sealy
court did not preclude the award of future royalties even if the franchisor
terminated the agreement, if it was the franchisee=s conduct that proximately caused the damages, and the award is
neither excessive, oppressive, nor disproportionate.  Id. at 1711.  But Sealy is not the only persuasive
authority pertaining to the issues that arises in this case.








In contrast to Sealy,
in American Speedy, the Court of Appeals for the Sixth Circuit affirmed
a district court=s ruling
awarding future royalties to a franchisor of print shops.  American Speedy, 69 Fed. App=x at 699.  There, the parties
entered into a twenty‑year franchise agreement.  Id. at 693.  With nine years remaining on the term of the
agreement, the franchisor terminated the franchise agreement based on the
franchisee=s failure to
pay royalties.  Id.  The trial court granted summary judgment in
favor of the franchisor based upon the franchisee=s failure to provide any evidence that created an issue of material
fact regarding the allegations in the franchisor=s pleadings.  Id. at 694B95.  The trial court awarded the
franchisor past‑due and future royalties. 
Id.  In affirming the trial
court=s award, the appellate court held that the franchisor was entitled to
all damages necessary to put itself in a position equivalent to that in which
it would have found itself if the franchise agreement had continued in effect
for the full twenty‑year term.  Id. at 699.








While both Sealy and American
Speedy are instructive in the area of franchise agreements and damages for
the breach of those agreements, neither are wholly instructive in this present
case.  Unlike either Sealy or American
Speedy, in this case, in addition to the franchisee=s failure to make royalty payments, Progressive also independently
withdrew from the franchise and ran its child-care facility under an
independent label.  The jury in this case
also found that Progressive had failed to comply with a material obligation of
the agreement.  And unlike in the above
cited cases in which the franchisor terminated the franchise agreements prior
to filing suit, the jury in this case found that Kids >R= KidsCthe franchisorChad not
failed to comply with the franchise agreement.








In addition to identifying
the distinctions between this case and other cases like Sealy or American
Speedy, this court must determine what Georgia would do in this case of
first impression for that state.  The
U.S. District Court for the Eastern District of Pennsylvania decision in Maaco
Enterprises., Inc. v. Cintron is helpful in crafting our holding.  No. 99‑CV‑5935, 2000 WL 669640
(E.D. Pa. May 17, 2000).  In Cintron,
Maaco, a franchisor of auto painting and body repair centers, was awarded lost
future royalties even though it had terminated the franchise relationship based
on the franchisees= failure to
perform.  Id. at *1.  Rather than engaging in a proximate cause
analysis, the Cintron court relied on a traditional contract analysis
under Pennsylvania law, which governed the franchise agreement, to support the
award of lost future royalties in a breach of contract case.  Id. at *4. 
The Cintron court reasoned that because Pennsylvania law allowed
for the recovery of lost profitsCAthe difference between what the plaintiff[s] actually earned and what
they would have earned had the defendant not committed the breach@CMaaco was entitled to receive the lost future royalties that it would
have received had the franchisee not breached the franchise agreement.  Id. 
Applying Pennsylvania law, the court held that, as the nonbreaching
party, Maaco was entitled to be placed in nearly the same position that it
would have occupied had there been no breach. 
Id.

This court, like the court in
Cintron, will also rely on a traditional contract  law analysis for this issue because Georgia
law is similar to Pennsylvania law in the area of contract damages.  Under Georgia law, damages growing out of a
breach of contract must be such as could be traced solely to breach, must have
arisen according to the usual course of things, and be such as the parties
contemplated as a probable result of such breach.  Lay Bros., Inc. v. Golden Pantry Food Stores
Inc., 616 S.E.2d 160, 163 (Ga. Ct. App. 2005).  The policy that drives Georgia law is Ato place the injured party, as near as may be, in the situation he
would have occupied absent the breach.@  Camp v. Eichelkraut,
539 S.E.2d 588, 596 (Ga. Ct. App. 2000) (citing Albany Phosphate Co. v.
Hugger Bros., 62 S.E. 533, 535 (Ga. 1908)). 
Lost profits are recoverable as damages if such are shown with
reasonable certainty and such profits were in the contemplation of the parties
at the time of the contract.  Authentic
Architectural Millworks Inc. v. SCM Group USA, 586 S.E.2d 726, 731 (Ga. Ct.
App. 2003); DeVane v. Smith, 268 S.E.2d 711, 713 (Ga. Ct. App. 1980). 








In this case, the jury found
that Progressive materially breached the franchise agreementsCagreements that memorialized the contemplation of the parties that
Progressive would pay five percent of gross-enrollment income over an initial
twenty-five year term.  We hold that Kids
>R= Kids was
entitled to seek recovery of lost past-due and future royalties that it would
have received but for Progressive=s breach that led to the termination of the franchise agreement before
the original twenty-five year term was completed.  We overrule Progressive=s second issue.

V.  Evidence of Damages








In its first issue,
Progressive argues that there was legally and factually insufficient evidence
to support the amount of past-due and future royalties. Progressive contends
that the contract language specifically defines a franchise as a child-care
facility operating under the name AKids >R= Kids.@  Progressive further contends that because
they were operating under the name ALegacy Learning Center,@ they were no longer a franchise per the parties= agreement.  Thus, Progressive
argues, by the express terms of the franchise agreement, they were obligated to
make payments to Kids >R= Kids only during the time they operated as AKids >R= Kids.@  And, Progressive argues, because Kids >R= Kids=s damages expert testified to a time period when Progressive operated
as Legacy Learning CenterCand thus no
longer a franchiseCthe expert=s testimony over-calculated past due and future royalty payments.

Kids >R= Kids
contends that Progressive=s having
operated under a different name was only one breach[6]
among many that led the jury to find that it was Progressive that breached the
franchise agreement.  Further, Kids >R= Kids argues
that Progressive first breached the franchise agreement when it refused to pay
royalties well before it began operating under a different name. Thus, Kids >R= Kids
argues, there is sufficient evidence of past-due and future royalties,
calculated from the date of defaultCthe date of Progressive=s expressed refusal to pay royalties. 
We agree with Kids >R= Kids.








Under Georgia law, Agenerally, [a reviewing court] affirms civil awards that are supported
by any evidence.@  C & F Svcs. Inc. v. First So. Bank,
573 S.E.2d 102, 107 (Ga. Ct. App. 2002) (citing Walker v. Bruno=s, Inc., 492 S.E.2d 336, 337 (Ga.
Ct. App. 1997)).  When there exists any
evidence to support the jury=s verdict, and no reversible error is otherwise committed, the verdict
will stand.  Bill Jones Motors v.
Mitchell, 110 S.E.2d 555, 557 (Ga. App. 1959).  A reviewing court will not substitute its
judgment for that of the jury and will neither weigh evidence nor determine
witness credibility.  See Almond v.
McCranie, 643 S.E.2d 535, 536 (Ga. Ct. App. 2007) (citing
Adler v. Adler, 61 S.E.2d 824, 832 (Ga. 1950)).  AAfter a jury returns a verdict and the trial judge approves it, it must
be affirmed on appeal if there is any evidence to support it as the jurors are
the sole and exclusive judges of the weight and credit given the evidence.@  Richardson v. Vaughn,
581 S.E.2d 689, 691 (Ga. Ct. App. 2003). 

In this case, it is clear
that
Kids >R= Kids argued that Progressive breached the franchise agreement when
Progressive refused to make any additional royalty payments.  Progressive admitted at trial that they
refused to pay royalty payments after the spring of 2002.  The jury found that Progressive failed to
materially comply with the franchise agreement. 
The trial judge entered judgment on this verdict.  We hold that there was sufficient evidence to
support the verdict and that Progressive has shown no reversible error that was
otherwise committed.  We overrule Progressive=s first issue.








VI.  Amount of Damages

In its third issue,
Progressive argues that the amount of damages is excessive.  Under Georgia law, Athe general rule on appeal of an award of damages is that a jury=s award cannot be successfully attacked . . . unless it is
so flagrantly excessive or inadequate, in light of the evidence, as to create a
clear implication of bias, prejudice, or gross mistake on the part of the
jurors.@  Dennis‑Smith v. Freeman, 627 S.E.2d 872, 874 (Ga. Ct. App. 2006).  The trial court=s approval of the verdict creates a presumption of correctness that
will not be disturbed absent compelling evidence.  Id. 

In the context of lost
profits, the rule against the recovery of vague, speculative, or uncertain
damages relates more especially to the uncertainty as to cause, rather than
uncertainty as to the measure or extent of the damages.  See T.C. Prop. Mgmt., Inc. v. Tsai, 600
S.E.2d 770, 772 (Ga. Ct. App. 2004). 
Mere difficulty at fixing the exact amount of lost profits, where
proximately flowing from the alleged injury, does not constitute a legal
obstacle in the way of their allowance.  Id.








The jury=s verdict was within the range of evidence presented at trial.  Kids >R= Kids=s designated forensic accountant and damages expert testified to
prospective losses of royalty payments from the date of Progressive=s last payment made in March, 2002. 
He concluded prospective lost revenues of $66,000.00 per year for the
Flower Mound child-care facility and $73,000.00 per year for the Plano
facility, through the unexpired terms of each franchise agreement.  These revenue calculations were based on the
two franchisee=s business
records, including enrollment records, cash receipts, account deposit records,
check registers, income tax returns for the last five years, weekly revenue
reports, sign-in sheets, tuition and income spreadsheets, and monthly royalty
summaries.  Ultimately, based on this
evidence, the jury returned a verdict of $753,561.94 in past-due and future
royalties for the Plano child-care facility and $631,346.78 in past-due and
future royalties for the Flower Mound child-care facility.  Based on this verdict, the trial court
entered judgment in favor of Kids >R= Kids in the amount of $1,384,008.72. 
We hold that, in light of the evidence, the jury=s award was not so flagrantly excessive as to create a clear
implication of bias on the part of the jury and that Progressive has not
provided compelling evidence to overcome the presumption that the trial court=s approval of the verdict should be disturbed.  We overrule Progressive=s third issue.

 

 

 

 








IV.  Conclusion

Having overruled all of
Progressive=s issues, we
affirm the trial court=s judgment.

 

DIXON W. HOLMAN

JUSTICE

PANEL: 
CAYCE, C.J.; HOLMAN and WALKER, JJ.

WALKER, J. concurs without opinion.

DELIVERED: 
November 6, 2008











[1]See Tex. R. App. P. 47.4.





[2]The Dunns are the owners of
Progressive Child Care Systems, Inc. and the personal guarantors of the
contracts entered into by Progressive with Kids >R= Kids.  Unless necessary for clarity, Appellants will
be collectively referred to as Progressive.





[3]Vinson is the founder and president
of Kids >R= Kids.





[4]Shuelke=s document list incorporated all
records that Karry Dunn testified in his deposition constituted all of the
franchisee=s available business records
relating to both franchises= incomes.





[5] The trial court does refer to the
agreements as having been Aterminated@ and Abreached@ during the directed
verdict stage of trial and again during the hearing on entering its judgment but states that there was a Afact issue . . . about
when the contract was terminated@ to be left for the jury. 
Given the posture of our holding in this case, we do not find these
statements by the trial judge to be outcome determinative.





[6] Kids >R= Kids points to the franchise
agreement where section 15(a)Ca non-compete clauseCdisallows the operation of a competing child-care facility
within a two-mile range of each of the child-care facilities at issue in this
case.  Thus, Kids >R= Kids
argues, the operation
of a child-care facility under ALearning Legacy Center@ is also a breach of the franchise agreement itself.  Kids >R= Kids argues, however, that
evidence exists that the material breach in this case was Progressive=s failure to continue to pay
royalties under the franchise agreements.