COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-06-274-CV

THE BURLINGTON NORTHERN AND APPELLANT

SANTA FE RAILWAY COMPANY

V.

GUNDERSON, INC. AND APPELLEES

ASF-KEYSTONE, INC.

------------

FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

Appellant BNSF Railway Company (f/k/a The Burlington Northern and Santa Fe Railway Company) appeals from a summary judgment granted in favor of Appellees Gunderson, Inc. and ASF-Keystone, Inc.  BNSF argues that the trial court erred by failing to conduct a choice-of-law analysis, by hearing the summary judgment motions before BNSF had adequate time to determine through discovery which state’s law applies to its claims, and by applying the Texas statute of repose as a bar to BNSF’s claims.  We affirm.

Background

In 1988, BNSF ordered 210 railroad boxcars from Gunderson.  Gunderson designed and built the boxcars in Oregon.  The boxcars included a coupling assembly to connect one to another.  Part of the coupling assembly is a device called the “draft key retainer system.”  Gunderson purchased the draft key retainer system for BNSF’s boxcars from Keystone, a Delaware corporation with general offices in Illinois and an “end-of-car” parts factory in Pennsylvania.  Gunderson delivered the boxcars to BNSF in November 1988.
(footnote: 1) 

On November 4, 2000, a BNSF train derailed in Scottsbluff, Nebraska, resulting in a chemical spill and exposing BNSF to extensive claims for property damage, environmental cleanup costs, personal injuries, and business interruption damages.  BNSF alleges that the derailment was caused by the failure of Keystone’s draft key retainer system on one of the boxcars furnished by Gunderson. 

On November 2, 2004, BNSF sued Gunderson and Keystone for negligence, product liability, breach of warranty, contribution, equitable indemnity, and unjust enrichment; it also sued Gunderson for breach of contract and contractual indemnity.  Gunderson and Keystone filed traditional motions for summary judgment in September and October 2005, arguing that BNSF’s claims were barred by the Texas statute of repose.  BNSF filed a response to the motions, arguing among other things that summary judgment was premature because it had been unable to conduct sufficient discovery to determine which state’s or states’ law governed its claims and requesting a continuance under rule of civil procedure 166a(g).  BNSF also argued that Texas law did not apply to the claims, but it never moved the trial court to take judicial notice of any other state’s law.

The trial court ultimately granted the motions for summary judgment. BNSF filed this appeal. 

Discussion

1. Choice of Law

BNSF first argues that the trial court erred by assuming that Texas law applied and by failing to conduct a choice-of-law analysis.  A trial court’s determination of choice of law is a question of law, which we review de novo.  
Pittsburgh Corning Corp. v. Walters
, 1 S.W.3d 759, 769 (Tex. App.—Corpus Christi 1999, pet. denied).  

Under rule of evidence 202, a party may compel a trial court to take judicial notice of another state’s law by filing a motion, giving notice to other parties, and furnishing the court with sufficient information to enable it to properly comply with the request.  
Tex. R. Evid.
 202.  But “[w]hen a party fails to request judicial notice of the law of another state as permitted under Rule 202, ‘Texas courts will simply presume that the law of the other state is identical to Texas law.’”  
Coca-Cola Co. v. Harmar Bottling Co.
, 218 S.W.3d 671, 695 (Tex. 2006) (Brister, J., dissenting) (quoting Olin Guy Wellborn III,
 Judicial Notice Under Article II of the Texas Rules of Evidence
, 19 
St. Mary’s L.J.
 1, 27 (1987)).  A preliminary motion is necessary to assure the application of the law of another jurisdiction, and absent a motion by a party, Texas law may be applied to a dispute.  
Pittsburgh Corning Corp.
, 1 S.W.3d at 769.

BNSF never moved the trial court to take judicial notice of another state’s law.  In its original petition, BNSF alleged that resolution of its claims “
may
 require application of the laws of other states” [emphasis added] and stated that it “intends to prove at trial the applicable laws of Nebraska, Oregon, Pennsylvania[,] or other states,” but its live pleading at the time of the summary judgment hearing—its third amended petition—made no conflict-of-law allegation and, indeed, did not even mention the possibility that another state’s law might apply.  In its summary judgment responses, BNSF argued that there was a choice-of-law dispute, but claimed it could not identify which state’s law applied because Gunderson and Keystone had stonewalled its discovery efforts. Yet even in its summary judgment response, BNSF did not ask the trial court to take judicial notice of any other state’s law, nor did it “furnish the court sufficient information to enable it properly to comply” with such a request as required by rule 202.  
See
 
Tex. R. Evid.
 202.  Thus, BNSF never filed a motion under rule 202 that would have compelled the trial court to take judicial notice of the law of any other state.

BNSF cites several cases where parties filed rule 202 motions shortly before trial and argues that it was not required to file a rule 202 motion because its claims never went to trial.  
See, e.g.,  Duncan v. Cessna Aircraft Co.
, 665 S.W.2d 414, 420 (Tex. 1984)
 (noting that motion to take judicial notice of New Mexico law was filed one week before trial).  These cases are inapposite because in those cases, the appellants filed rule 202 motions, while in this case, BNSF never filed a rule 202 motion.   Under rule 202, a trial court is required to take judicial notice of another state’s law only when a party files an appropriate motion.  
Tex. R. Evid.
 202 (“A court upon its own motion 
may
, or upon the motion of a party 
shall
, take judicial notice . . . .” (emphasis added
)).  BNSF did not file a rule 202 motion; thus, it cannot complain that the trial court failed to take judicial notice of another state’s law, regardless of when the deadline for filing such a motion falls.  To adopt the rule proposed by BNSF would create a summary-judgment limbo where a trial court could not grant summary judgment until a party filed its choice-of-law motion “shortly before trial.”
(footnote: 2)
 Because BNSF never filed a rule 202 motion requesting the trial court to take judicial notice of other states’ law, the presumption arises that the law of the other states in question is identical to Texas law.  
See
 
Coca-Cola Co.
, 218 S.W.3d at 695 (Brister, J., dissenting); 
Johnson v. Structured Asset Servs., LLC
, 148 S.W.3d 711, 720 (Tex. App.—Dallas 2004, no pet.) (presuming sister state’s law is the same as Texas law in the absence of a request to take judicial notice or proper proof of the other state’s law); 
Burns v. Resolution Trust Corp.
, 880 S.W.2d 149, 151 (Tex. App.—Houston [14th Dist.] 1994, no writ) (same); 
see also
 
Gevinson v. Manhattan Constr. Co. Of Okla.
, 449 S.W.2d 458, 465 n.2 (Tex. 1969) (presuming Texas law applied in the absence of a proper request to take judicial notice of New York law).

If the law of other states is presumed to be identical to Texas law, there was no need for the trial court to conduct a conflict-of-law analysis because there was no conflict to analyze.  
See Duncan
, 665 S.W.2d at 419 (stating that, before undertaking a choice-of-law analysis, the Court “must first determine whether there is a difference between the rules of Texas and New Mexico on this issue”); 
Fraud-Tech, Inc. v. Choicepoint, Inc.
, 102 S.W.3d 366, 378 (Tex. App.—Fort Worth 2003, pet. denied) (“If no conflict of law exists on the issues, we need not decide which state’s law applies.”); 
Young Ref. Corp. v. Penzoil Co.
, 46 S.W.3d 380, 385 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (finding no necessity to decide which state’s law applied absent a conflict of law on the issues presented);
 St. Paul Surplus Lines Ins. Co. v. Geo Pipe Co.
, 25 S.W.3d 900, 903 n.2 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (“In the absence of a true conflict of law, we do not undertake choice of law analysis.”).  And because the trial court was entitled to presume that the law of the other states is identical to Texas law, the trial court did not err by applying Texas law to BNSF’s claims.

BNSF also argues that the trial court abused its discretion by implicitly overruling its motion to postpone the summary judgment hearing until BNSF had adequate time to discover which state’s law applied.  We disagree.  In the absence of a rule 202 motion, the trial court was entitled to presume that whichever state’s law applied, it is identical to Texas law.  Thus, even if we assume that BNSF legitimately needed more time to determine which state’s law applied, that determination would have no effect on the trial court’s or this court’s analysis of the summary judgment motions because, regardless of which state’s law applied, that state’s law is presumed to be identical to Texas law.  We therefore hold that the trial court did not abuse its discretion by implicitly overruling BNSF’s motion for continuance.  
See BMC Software Belg. N.V. v. Marchand
, 83 S.W.3d 789, 800 (Tex. 2002) (holding that a trial court’s decision to grant or deny a motion for continuance will be reversed only upon a showing of a clear abuse of discretion).

BNSF argues that without the discovery it requested from Gunderson and Keystone—and, by implication, without a continuance so that it could obtain that discovery—it could not identify the contact states and conduct “the definitive choice-of-law analysis required for a [r]ule 202 motion.”  But nothing in rule 202 requires a “definitive choice-of-law analysis.”  Rule 202 simply provides a mechanism by which a party may compel the trial court to judicially notice the law of another state; it does not force a party to make a definitive declaration as to which state’s law applies.  Moreover, BNSF identified several contact states in its original petition, and nothing in rule 202 precluded BNSF from moving the trial court to take judicial notice of those states’ laws, even if it was unsure which state’s law applied.

We hold that the trial court did not err by applying Texas law to the summary judgment motions, and we overrule BNSF’s choice-of-law issues.

2. Texas Statute of Repose

Having determined that Texas law applies, we now consider the effect of Texas law, and particularly the statute of repose, on BNSF’s claims.  BNSF tacitly concedes that if Texas law applies, then the Texas statute of repose bars all of its causes of action against Keystone and all of its causes of action against Gunderson except its claim for contractual indemnity.
(footnote: 3) 

Unlike a statute of limitations, which extinguishes the right to prosecute an accrued cause of action after a period of time, a statute of repose limits the time during which a cause of action can arise and usually runs from an act of a defendant.  
Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.,
 419 F.3d 355, 363 (5th Cir. 2005).  It abolishes the cause of action after the passage of time even though the cause of action may not have yet accrued.  
Id.

The Texas statute of repose provides that a 
claimant must commence a products liability action against a manufacturer or seller of a product before the end of fifteen years after the date of the sale of the product by the defendant.  
Tex. Civ. Prac. & Rem. Code Ann.
 § 16.012(b) (Vernon Supp. 2006).  The statute broadly defines “products liability action” as

any action
 against a manufacturer or seller for recovery of damages or other relief for harm allegedly caused by a defective product, whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, 
or any other theory or combination of theories
, and whether the relief sought is recovery of damages or any other legal or equitable relief, including a suit for:

(A) injury or damage to or loss of real or personal property;

(B) personal injury;

(C) wrongful death;

(D) economic loss; or

(E) declaratory, injunctive, or other equitable relief.

Id.
 § 16.012(a)(2) (Vernon Supp. 2006) (emphasis added). 

BNSF argues that its cause of action for contractual indemnity is not barred by the statute of repose because it is not a products liability action.  As the basis for its contractual indemnity claim, BNSF points to its purchase order for Gunderson’s boxcars, which contains the following language:

SELLER agrees to assume all liability for and indemnify and save BUYER harmless from any and all claims, suits, losses, damages or expenses, on account of any injuries to or death of any and all persons whomsoever, and any and all loss or destruction of or any damage to property whatsoever, . . . arising or growing out of or in any manner caused by, connected with, or resulting in whole or in part from the furnishing of any articles, goods, or materials . . . . 

BNSF contends that the indemnity provision obligates Gunderson to indemnify BNSF for any loss arising from the “furnishing” of the boxcars regardless of whether the boxcars were defective and, therefore, that BNSF’s claim for contractual indemnity is not a products liability action and is not barred by the statute of repose.  Gunderson replies that the statute’s broad definition of “products liability action” bars all claims arising from a defective product regardless of the theory under which the buyer seeks relief. 

We need not resolve the theoretical possibility of a contractual indemnity claim that is not barred by the statute of repose because BNSF’s claims in this case, including its claim for contractual indemnity, are clearly within the statute’s purview.  All of BNSF’s claims arise from the allegedly defective boxcar coupling.  All of its claims, including its claim for contractual indemnity,  are claims “against a manufacturer or seller for recovery of damages or other relief for harm allegedly caused by a defective product.”  
See id.
  According to BNSF, a defective boxcar caused the derailment, which in turn caused damage to BNSF in the form of settlement payouts for which BNSF now seeks indemnification.  Thus, without the allegedly defective boxcar, BNSF would have no claim for indemnity in this case.  We hold that section 16.012 applies to BNSF’s contractual indemnity claim.  
See Oviedo v. Crown Cork & Seal Co.,
 1997 WL 133256, at *1 (N.D. Tex. 1997) (memo. op. and order) (not designated for publication)
 (applying section 16.012 as a bar to a statutory indemnity claim).

Having determined that section 16.012 applies to BNSF’s contractual indemnity claim, we now apply the section to the claim to determine whether the claim is barred.  Gunderson delivered the boxcars in 1988.  BNSF sued Gunderson in 2004.  Thus, BNSF did not “commence a products liability action against a manufacturer or seller of a product before the end of 15 years after the date of the sale of the product by the defendant,” and its claims are barred by the statute of repose.  
See
 
Tex. Civ. Prac. & Rem. Code Ann. § 16.012(
b).  We hold that the trial court did not err by granting summary judgment on BNSF’s claim for contractual indemnity.
(footnote: 4)
Conclusion

Having held that the trial court did not err by applying Texas law or by granting summary judgment under the statute of repose, we overrule BNSF’s first, second, and third issues.  We do not reach BNSF’s fourth issue, in which it argues that its claims are not barred by the Texas statute of limitations.  
See
 
Tex. R. App. P.
 47.1.  We affirm the trial court’s judgment.  

ANNE GARDNER

JUSTICE

PANEL A: CAYCE, C.J.; LIVINGSTON and GARDNER, JJ.

DELIVERED:  August 24, 2007

FOOTNOTES
1:
Gunderson actually delivered the boxcars to an entity named Wilmington Trust because BNSF had assigned its rights under the purchase order to Wilmington under a financing and lease-back agreement.  This detail is not relevant to our analysis.

2:
Further, a summary judgment hearing is deemed a “trial” for some purposes.  
See, e.g., Goswami v. Metro. & Sav. Loan Ass’n
, 751 S.W.2d 487, 490 (Tex. 1988) (holding a summary judgment hearing is a trial under rule of civil procedure 63); 
Gallegos v. Millers Mut. Fire Ins. Co. of Tex.
, 550 S.W.2d 350, 353 (Tex. Civ. App.—El Paso 1977, no writ)
 (“We believe a summary judgment hearing is a trial within the meaning of [former] Rule [of civil procedure] 93(n).”).

3:
Both Gunderson and Keystone moved for summary judgment under the Texas statute of repose.  On appeal, BNSF’s brief addresses the Texas statute of repose only in connection with Gunderson’s claim for contractual indemnity. 
When a trial court’s order granting summary judgment does not specify the ground or grounds relied on for its ruling
, and its judgment rests upon more than one independent ground or defense asserted by the movant, 
the aggrieved party must assign error to each ground, or the judgment will be affirmed on the ground to which no complaint is made.  
Scott v. Galusha
, 890 S.W.2d 945, 948 (Tex. App.—Fort Worth 1994, writ denied).
 

4:
Although BNSF does not argue on appeal that its other claims against Gunderson and its claims against Keystone are not barred by the statute of repose, it did so argue in the trial court.  Out of an abundance of caution, we hold that the statute of repose bars all of BNSF’s claims and that the trial court did not err by granting summary judgment on all of those claims.