

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-07-127-CV

PROGRESSIVE CHILD CARE                                    APPELLANTS
SYSTEMS, INC.,
KARRY L. DUNN, AND HEATHER
DUNN

V.

KIDS 'R' KIDS INTERNATIONAL, INC.                         APPELLEES
AND PATRICK D. VINSON

------------

### FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellants Progressive Child Care Systems, Inc., Karry L. Dunn, and

Heather Dunn[2] appeal the trial court's judgment based on a jury verdict in favor

---

[1] *See* Tex. R. App. P. 47.4.

[2] The Dunns are the owners of Progressive Child Care Systems, Inc. and the personal guarantors of the contracts entered into by Progressive with Kids 'R' Kids. Unless necessary for clarity, Appellants will be collectively referred to as Progressive.

of Appellees Kids 'R' Kids International, Inc. and Patrick D. Vinson[3]. The verdict awarded Kids 'R' Kids past-due and future royalty payments related to two franchise agreements. In three issues, Progressive argues that there was legally and factually insufficient evidence to support the amount of past and future royalties, that there was legally and factually insufficient evidence that Progressive proximately caused the amount of damages, and that the amount of damages are excessive. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In late November 1995, Progressive entered into a franchise agreement with Kids 'R' Kids to operate a child-care facility in Plano, Texas. Per the agreement, Progressive would operate the child-care facility under the name "Kids 'R' Kids."

In early October 1999, Progressive again contracted with Kids 'R' Kids to operate a second franchise. In addition to a second franchise agreement, Progressive signed an assignment, transfer of franchise, and asset purchase agreement whereby Progressive would agree to operate a child-care facility—located in Flower Mound, Texas, and formerly known as Fantastic Kids, Inc.—as a Kids 'R' Kids franchise. Among Progressive's obligations under

---

[3] Vinson is the founder and president of Kids 'R' Kids.

2

both franchise agreements was Progressive's agreement to pay five percent of enrollment-derived gross revenues to the franchisor—Kids 'R' Kids. Both franchise agreements, as well as the transfer agreement pertaining to Fantastic Kids, Inc., provide that the franchise agreement's initial term was to be twenty-five years.

Ostensibly driven by the belief that Kids 'R' Kids provided poor organizational support for Progressive's two franchises, Karry Dunn informed Vinson that Vinson either needed to hire someone to better support the "kids and the franchisees, . . . let [him] take over the state of Texas to help support the whole system, or just buy [him] out." In March 2002, Progressive made its last royalty payment to Kids 'R' Kids. In early spring 2003, Progressive began operating both of its child-care facilities under the name, "Legacy Learning Center."

Kids 'R' Kids sued Progressive on October 3, 2003. It alleged breach of contract, breach of personal guaranty, fraud, and conspiracy. Kids 'R' Kids also sought a permanent injunction against Progressive's operating the two child-care centers as anything other than Kids 'R' Kids centers but eventually withdrew this cause of action.

3

In addition to a general denial, Progressive counterclaimed against Kids 'R' Kids for fraud, fraud in the inducement, intentional and negligent misrepresentation, deceptive trade practices, and rescission.

At trial, Gregory Schuelke—Kids 'R' Kids's forensic accountant and designated damages expert—testified that he had examined "the books and records" pertaining to both the Plano and Flower Mound child-care centers. Schuelke stated that he had examined over twenty different documents concerning the two centers, including Kids 'R' Kids's petition, enrollment records for both centers, cash receipts, deposit records, tax returns, tuition records, and royalty summaries. Schuelke stated that he had also reviewed Karry Dunn's deposition testimony.[4]

Schuelke testified that he calculated past-due royalties for the Plano center at $316,662.00 and for the Flower Mound center at $247,461.00. He also testified that his calculations for future royalties based on a continuing contract through a twenty-five year agreement, and discounting to present day's dollars, were $873,879.00 for the Plano center and $767,771.00 for the Flower Mound center.

---

[4] Shuelke's document list incorporated all records that Karry Dunn testified in his deposition constituted all of the franchisee's available business records relating to both franchises' incomes.

The jury returned a verdict in favor of Kids 'R' Kids on all claims. The trial court entered its judgment in favor of Kids 'R' Kids and against Progressive. Based on the jury verdict, the trial court awarded Kids 'R' Kids $1,385,008.72. This appeal followed.

### III. GEORGIA LAW APPLIES

As a preliminary matter, Progressive argues that Georgia law applies to this case because the franchise agreements state that they "shall be governed by and construed in accordance with the laws of the State of Georgia." We agree.

A trial court's determination of choice of law is a question of law and is reviewed de novo. *Pittsburgh Corning Corp. v. Walters*, 1 S.W.3d 759, 769 (Tex. App.—Corpus Christi 1999, pet. denied). Generally, the parties' contractual choice of law will be given effect if the contract bears a reasonable relationship to the chosen state and no countervailing public policy of the forum demands otherwise. *SAVA Gumarska in Kemijska Industria D.D. v. Advanced Polymer Scis., Inc.*, 128 S.W.3d 304, 314 (Tex. App.—Dallas 2004, no pet.). However, a preliminary motion must be filed asking the court to apply another state's laws. *Burlington N. and Santa Fe Ry. Co. v. Gunderson*, Inc., 235 S.W.3d 287, 289 (Tex. App.—Fort Worth 2007, pet. withdrawn) (citing *Pittsburgh Corning Corp.*, 1 S.W.3d at 769); *see also* Tex. R. Evid. 202.

5

In this case, both parties filed motions asking the trial court to take judicial notice of Georgia law. Both parties' motions contain extensive Georgia case law pertaining to breach of contract and damages. Further, Kids 'R' Kids is a Georgia corporation. The franchise agreements in this case bear a reasonable relationship to the state of Georgia. Thus, we will analyze Progressive's issues under Georgia law.

## IV. PROGRESSIVE'S BREACH ENTITLED KIDS 'R' KIDS TO SEEK DAMAGES

In its second issue, Progressive argues that there was legally and factually insufficient evidence that it proximately caused the amount of damages awarded for past-due and future royalty payments. The gist of Progressive's argument is that it could not have proximately caused any damages arising from the failure to make royalty payments after late spring–early winter 2003, because the franchise agreement had been terminated by the franchisor's president, Vinson. Progressive cites what it labels a "finding as a matter of law" by the trial court, in which the trial court discussed during the directed verdict stage of trial, and again during the hearing on entering its judgment, the franchise agreement between Progressive and Kids 'R' Kids as having been terminated during that time frame.[5] Progressive also cites Vinson's trial

---

[5] The trial court does refer to the agreements as having been "terminated" and "breached" during the directed verdict stage of trial and again

6

testimony where he states "as far as I'm concerned, I wouldn't have [the Dunns] back as a franchisee" as evidence that it was Vinson—the franchisor—who terminated the franchise agreement.

Based on these presuppositions and admitting that neither Georgia nor Texas has decided the issue of whether a franchisee can be liable to pay damages for past-due and future royalties when there has been a breach of contract, Progressive relies on *Postal Instant Press, Inc. v. Sealy*, 43 Cal. App. 4th 1704, 1709 (1996), and its progeny for the proposition that a franchisor cannot recover past-due and future royalties after the termination of a franchise agreement. *See also Kissinger, Inc. v. Singh*, 304 F. Supp. 2d 944, 951 (W. D. Mich. 2003); *Burger King Corp. v. Hinton, Inc.*, 203 F. Supp. 2d 1357, 1366 (S.D. Fla. 2002); *I Can't Believe It's Yogurt v. Gunn*, 1997 WL 599391, No. Civ. A. 94-OK-2109-TL (D. Colo. 1997). *Contra Am. Speedy Printing Ctrs., Inc. v. AM Mktg, Inc.,* 69 Fed. App'x 692, 699 (6th Cir. 2003) (designated not for publication by the court).

In *Sealy*, the franchisee failed to make several royalty payments as specified in the franchise agreement, and the franchisor declared that the

during the hearing on entering its judgment but states that there was a "fact issue . . . about when the contract was terminated" to be left for the jury. Given the posture of our holding in this case, we do not find these statements by the trial judge to be outcome determinative.

7

franchisee was in breach and terminated the agreement. *Sealy*, 43 Cal. App. 4th at 1707. The *Sealy* court found that the franchisor could not recover for future profits where it had terminated the agreement because the damage was proximately caused by the franchisor's termination rather than by the franchisee's breach. *Id.* at 1713. In addition, the *Sealy* court found that an award of future profits under those circumstances would amount to "unreasonable, unconscionable or grossly oppressive" damages. *Id*. at 1714. According to the *Sealy* court, the possibility of an award of future profits would provide the franchisor with a bludgeon in every contract dispute, because unless the franchisee complies, it is faced with the threat of the franchisor terminating the agreement and being awarded future profits. *Id*. at 1709. But, significantly, the *Sealy* court expressly refused to consider whether damages for future profits would be available if the *franchisee* terminated the agreement. *Id*. at 1710 n.2. Moreover, the *Sealy* court did not preclude the award of future royalties even if the franchisor terminated the agreement, if it was the franchisee's conduct that proximately caused the damages, and the award is neither excessive, oppressive, nor disproportionate. *Id.* at 1711. But *Sealy* is not the only persuasive authority pertaining to the issues that arises in this case.

8

In contrast to *Sealy*, in *American Speedy*, the Court of Appeals for the Sixth Circuit affirmed a district court's ruling awarding future royalties to a franchisor of print shops. *American Speedy,* 69 Fed. App'x at 699. There, the parties entered into a twenty-year franchise agreement. *Id*. at 693. With nine years remaining on the term of the agreement, the franchisor terminated the franchise agreement based on the franchisee's failure to pay royalties. *Id.* The trial court granted summary judgment in favor of the franchisor based upon the franchisee's failure to provide any evidence that created an issue of material fact regarding the allegations in the franchisor's pleadings. *Id.* at 694–95. The trial court awarded the franchisor past-due and future royalties. *Id*. In affirming the trial court's award, the appellate court held that the franchisor was entitled to all damages necessary to put itself in a position equivalent to that in which it would have found itself if the franchise agreement had continued in effect for the full twenty-year term. *Id.* at 699.

While both *Sealy* and *American Speedy* are instructive in the area of franchise agreements and damages for the breach of those agreements, neither are wholly instructive in this present case. Unlike either *Sealy* or *American Speedy*, in this case, in addition to the franchisee's failure to make royalty payments, Progressive also independently withdrew from the franchise and ran its child-care facility under an independent label. The jury in this case also

9

found that Progressive had failed to comply with a material obligation of the agreement. And unlike in the above cited cases in which the franchisor terminated the franchise agreements prior to filing suit, the jury in this case found that Kids 'R' Kids—the franchisor—had not failed to comply with the franchise agreement.

In addition to identifying the distinctions between this case and other cases like *Sealy* or *American Speedy*, this court must determine what Georgia would do in this case of first impression for that state. The U.S. District Court for the Eastern District of Pennsylvania decision in *Maaco Enterprises., Inc. v. Cintron* is helpful in crafting our holding. No. 99-CV-5935, 2000 WL 669640 (E.D. Pa. May 17, 2000). In *Cintron*, Maaco, a franchisor of auto painting and body repair centers, was awarded lost future royalties even though it had terminated the franchise relationship based on the franchisees' failure to perform. *Id.* at *1. Rather than engaging in a proximate cause analysis, the *Cintron* court relied on a traditional contract analysis under Pennsylvania law, which governed the franchise agreement, to support the award of lost future royalties in a breach of contract case. *Id.* at *4. The *Cintron* court reasoned that because Pennsylvania law allowed for the recovery of lost profits—"the difference between what the plaintiff[s] actually earned and what they would have earned had the defendant not committed the breach"—Maaco was entitled

10

to receive the lost future royalties that it would have received had the franchisee not breached the franchise agreement. *Id*. Applying Pennsylvania law, the court held that, as the nonbreaching party, Maaco was entitled to be placed in nearly the same position that it would have occupied had there been no breach. *Id.*

This court, like the court in *Cintron*, will also rely on a traditional contract law analysis for this issue because Georgia law is similar to Pennsylvania law in the area of contract damages. Under Georgia law, damages growing out of a breach of contract must be such as could be traced solely to breach, must have arisen according to the usual course of things, and be such as the parties contemplated as a probable result of such breach. *Lay Bros., Inc. v. Golden Pantry Food Stores Inc.*, 616 S.E.2d 160, 163 (Ga. Ct. App. 2005). The policy that drives Georgia law is "to place the injured party, as near as may be, in the situation he would have occupied absent the breach." *Camp v. Eichelkraut*, 539 S.E.2d 588, 596 (Ga. Ct. App. 2000) (citing *Albany Phosphate Co. v. Hugger Bros.*, 62 S.E. 533, 535 (Ga. 1908)). Lost profits are recoverable as damages if such are shown with reasonable certainty and such profits were in the contemplation of the parties at the time of the contract. *Authentic Architectural Millworks Inc. v. SCM Group USA*, 586 S.E.2d 726, 731 (Ga. Ct. App. 2003); *DeVane v. Smith*, 268 S.E.2d 711, 713 (Ga. Ct. App. 1980).

11

In this case, the jury found that Progressive materially breached the franchise agreements—agreements that memorialized the contemplation of the parties that Progressive would pay five percent of gross-enrollment income over an initial twenty-five year term. We hold that Kids 'R' Kids was entitled to seek recovery of lost past-due and future royalties that it would have received but for Progressive's breach that led to the termination of the franchise agreement before the original twenty-five year term was completed. We overrule Progressive's second issue.

## V. EVIDENCE OF DAMAGES

In its first issue, Progressive argues that there was legally and factually insufficient evidence to support the amount of past-due and future royalties. Progressive contends that the contract language specifically defines a franchise as a child-care facility operating under the name "Kids 'R' Kids." Progressive further contends that because they were operating under the name "Legacy Learning Center," they were no longer a franchise per the parties' agreement. Thus, Progressive argues, by the express terms of the franchise agreement, they were obligated to make payments to Kids 'R' Kids only during the time they operated as "Kids 'R' Kids." And, Progressive argues, because Kids 'R' Kids's damages expert testified to a time period when Progressive operated as

12

Legacy Learning Center—and thus no longer a franchise—the expert's testimony over-calculated past due and future royalty payments.

Kids 'R' Kids contends that Progressive's having operated under a different name was only one breach[6] among many that led the jury to find that it was Progressive that breached the franchise agreement. Further, Kids 'R' Kids argues that Progressive first breached the franchise agreement when it refused to pay royalties well before it began operating under a different name. Thus, Kids 'R' Kids argues, there is sufficient evidence of past-due and future royalties, calculated from the date of default—the date of Progressive's expressed refusal to pay royalties. We agree with Kids 'R' Kids.

Under Georgia law, "generally, [a reviewing court] affirms civil awards that are supported by any evidence." *C & F Svcs. Inc. v. First So. Bank*, 573 S.E.2d 102, 107 (Ga. Ct. App. 2002) (citing *Walker v. Bruno's, Inc.*, 492 S.E.2d 336, 337 (Ga. Ct. App. 1997)). When there exists any evidence to support the jury's verdict, and no reversible error is otherwise committed, the

---

[6] Kids 'R' Kids points to the franchise agreement where section 15(a)—a non-compete clause—disallows the operation of a competing child-care facility within a two-mile range of each of the child-care facilities at issue in this case. Thus, Kids 'R' Kids argues, the operation of a child-care facility under "Learning Legacy Center" is also a breach of the franchise agreement itself. Kids 'R' Kids argues, however, that evidence exists that the material breach in this case was Progressive's failure to continue to pay royalties under the franchise agreements.

13

verdict will stand.  *Bill Jones Motors v. Mitchell*, 110 S.E.2d 555, 557 (Ga. App. 1959).  A reviewing court will not substitute its judgment for that of the jury and will neither weigh evidence nor determine witness credibility.  *See Almond v. McCranie*, 643 S.E.2d 535, 536 (Ga. Ct. App. 2007) (citing *Adler v. Adler*, 61 S.E.2d 824, 832 (Ga. 1950)).  "After a jury returns a verdict and the trial judge approves it, it must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence."  *Richardson v. Vaughn*, 581 S.E.2d 689, 691 (Ga. Ct. App. 2003).

In this case, it is clear that Kids 'R' Kids argued that Progressive breached the franchise agreement when Progressive refused to make any additional royalty payments.  Progressive admitted at trial that they refused to pay royalty payments after the spring of 2002.  The jury found that Progressive failed to materially comply with the franchise agreement.  The trial judge entered judgment on this verdict.  We hold that there was sufficient evidence to support the verdict and that Progressive has shown no reversible error that was otherwise committed.  We overrule Progressive's first issue.

## VI.  AMOUNT OF DAMAGES

In its third issue, Progressive argues that the amount of damages is excessive.  Under Georgia law, "the general rule on appeal of an award of damages is that a jury's award cannot be successfully attacked . . . unless it is so flagrantly excessive or inadequate, in light of the evidence, as to create a clear implication of bias, prejudice, or gross mistake on the part of the jurors." *Dennis-Smith v. Freeman*, 627 S.E.2d 872, 874 (Ga. Ct. App. 2006).  The trial court's approval of the verdict creates a presumption of correctness that will not be disturbed absent compelling evidence.  *Id.*

In the context of lost profits, the rule against the recovery of vague, speculative, or uncertain damages relates more especially to the uncertainty as to cause, rather than uncertainty as to the measure or extent of the damages. *See T.C. Prop. Mgmt., Inc. v. Tsai*, 600 S.E.2d 770, 772 (Ga. Ct. App. 2004). Mere difficulty at fixing the exact amount of lost profits, where proximately flowing from the alleged injury, does not constitute a legal obstacle in the way of their allowance.  *Id*.

The jury's verdict was within the range of evidence presented at trial. Kids 'R' Kids's designated forensic accountant and damages expert testified to prospective losses of royalty payments from the date of Progressive's last payment made in March, 2002.  He concluded prospective lost revenues of

15

$66,000.00 per year for the Flower Mound child-care facility and $73,000.00 per year for the Plano facility, through the unexpired terms of each franchise agreement. These revenue calculations were based on the two franchisee's business records, including enrollment records, cash receipts, account deposit records, check registers, income tax returns for the last five years, weekly revenue reports, sign-in sheets, tuition and income spreadsheets, and monthly royalty summaries. Ultimately, based on this evidence, the jury returned a verdict of $753,561.94 in past-due and future royalties for the Plano child-care facility and $631,346.78 in past-due and future royalties for the Flower Mound child-care facility. Based on this verdict, the trial court entered judgment in favor of Kids 'R' Kids in the amount of $1,384,008.72. We hold that, in light of the evidence, the jury's award was not so flagrantly excessive as to create a clear implication of bias on the part of the jury and that Progressive has not provided compelling evidence to overcome the presumption that the trial court's approval of the verdict should be disturbed. We overrule Progressive's third issue.

## IV. CONCLUSION

Having overruled all of Progressive's issues, we affirm the trial court's judgment.

DIXON W. HOLMAN
JUSTICE

PANEL:  CAYCE, C.J.; HOLMAN and WALKER, JJ.

WALKER, J. concurs without opinion.

DELIVERED:  November 6, 2008

17